UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JULIA BOIS,

            Plaintiff,

    v.

LEVI STRAUSS & CO.,

            Defendant.

Case No. 23-cv-02772-TLT

**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT LS&CO.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF JULIA BOIS' MOTION FOR SUMMARY JUDGMENT**

Re: ECF 47, 49

## INTRODUCTION

Plaintiff Julia Bois ("Plaintiff") seeks compensatory and punitive damages from defendant Levi Strauss & Co. ("Defendant" or "LS&Co."), alleging that Defendant engaged in unlawful and discriminatory behavior due to Plaintiff's sex, pregnancy, and age in violation of Title VII, the Age Discrimination in Employment Act ("ADEA"), the California Fair Employment and Housing Act ("FEHA"), the California Equal Pay Act ("EPA"), and California Labor Code Section 226(c).

Defendant moved for summary judgment on all claims or, in the alternative, for partial summary judgment as the Court sees fit. ECF 47. Plaintiff submitted a cross-motion for summary judgment for the sex discrimination claims. ECF 49.

Having considered all the papers submitted by the parties and for the reasons set forth below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** LS&Co's Motion for Summary Judgment, ECF 47, and **DENIES** Bois' Cross-Motion for Summary Judgment, ECF 49.

## BACKGROUND

### I.    PROCEDURAL HISTORY

Plaintiff filed suit in the United States District Court, Northern District of California on

June 5, 2023, alleging the following claims against defendant: (1) Title VII violation for sex discrimination, (2) ADEA violation, (3) FEHA violations for age and sex discrimination, (4) California EPA violation, and (5) California Labor Code section 226(c) violation. ECF 1. Plaintiff seeks compensatory and punitive damages, including back pay, front pay, lost benefits, emotional and physical distress, and mental anguish. ECF 1. On January 23, 2024, both Plaintiff and Defendant filed motions for summary judgment. ECF 47, 49. The parties timely filed their oppositions and replies as required by Civil Local Rule 7-3. ECF 60, 62, 73, 75.

## II.     FACTS

Julia Bois is a woman and mother of two who worked for LS&Co. from 2012 to 2023. Jt. Statement of Undisputed Facts, ECF 88, ¶¶ 1–2, 34. She began her career at LS&Co. as an employee in the Marketing department, where she was recognized for her successes throughout her tenure. *Id.* ¶ 2. She he was promoted to Senior Manager of Brand Marketing in 2014 and to Director of U.S. Consumer Marketing in 2017. *Id.* ¶¶ 6–7, 34. Her supervisor, Stacy Doren, was influential in both promotions. *Id.*

Next to her escalation in the corporate ranks, Bois received a nomination to the Viola Leadership Program, a program for "female talent." She also received a "Korn Ferry 360" review, which indicated that Bois was ready for a promotion to Senior Director. *Id.* ¶¶ 6–7, 9, 29–30. However, Bois felt that a Senior Director promotion was particularly hard to obtain.

In 2019, Bois discussed a Senior Director position in Latin America with Doren. During the discussions, Doren told Bois that she could not put a woman in Latin America, citing cultural challenges. *Id.* ¶¶ 19–22, 28. Curtis Hanlon, another LS&Co. employee was later promoted to the position. *Id.* ¶ 18. Bois accepted a "lateral" move into Hanlon's old position, Director of U.S. Retail Marketing at Doren's recommendation. *Id.* ¶ 24–25. Doren emphasized Bois' need for "channel marketing" experience, which her new position provided. Decl. Bois, ECF 75-2, ¶ 5.

In 2020, LS&Co. rehired Lauren Uchrin, a former employee, for the Director of U.S. Consumer Marketing position, Bois' former position. *Id.* ¶ 31. The following April, Bois announced her second pregnancy. *Id.* ¶ 37. Roughly one month later, Uchrin received a promotion to Senior Director of U.S. Retail Marketing. *Id.* ¶ 38. Doren told Bois that her decision was based, in part, on her relative "work capacity." *Id.* ¶ 39. In August 2021, Bois turned 40 years old and gave birth to her second child. *Id.* ¶ 42–43.

After returning from maternity leave in December 2021, Bois and Doren discussed the Senior Director of Wholesale Marketing position. Bois Dep., Ex. 520, ECF 48, at 88. However, Brenna Brandon, another former LS&Co. employee, was rehired into the position. Jt. Statement of Undisputed Facts, ECF 88, ¶ 45. At the time of her promotion, Brandon was younger than 40 years old. *Id.* ¶ 45.

Bois also learned that two employees in the e-commerce unit, Jessica Reed and Eric Smith, were each promoted to Senior Director positions. *Id.* ¶ 47.

By September 2022, Bois questioned why many of her colleagues had received Senior Director promotions and, despite her accolades, she had not. She approached Uchrin with her concern, and then, Karen Riley Grant, LS&Co.'s Chief Marketing Officer. *Id.* ¶¶ 46, 48. Uchrin eventually told Bois that she would submit a promotion request for Tommy Hilton but did not address the topic of Bois' promotion. *Id.* ¶ 49. Meanwhile, Karen Riley Grant told Bois that the Smith and Reed promotions were not supposed to have happened when they did. *Id.* ¶ 48.

Bois submitted her resignation in March 2023, two months after learning that Hilton received a Senior Director promotion and one month after receiving a "Great Year" performance review from Uchrin. *Id.* ¶¶ 48, 50–51. Bois filed suit on June 5, 2023.

//

**LEGAL STANDARD**

### I.  SUMMARY JUDGMENT OF EMPLOYMENT DISCRIMINATION CLAIMS

A party may move for summary judgment, or partial summary judgment, identifying claims, or parts of claims, for which summary judgment is sought. Fed. R. Civ. P. 56(a). If the Court finds there is no genuine dispute of material fact, then it may grant the motion, finding that the moving party is entitled to judgment as a matter of law. *Id.*

When, as here, the parties file cross-motions for summary judgment, "[the Court] review[s] each motion . . . separately, giving the nonmoving party for each motion the benefit of all reasonable inferences." *Brunozzi v. Cable Commc'ns.*, 851 F.3d 990, 995 (9th Cir. 2017) (internal citation omitted). "'As a general matter, the plaintiff in an employment discrimination action need [*sic*] produce very little evidence in order to overcome an employer's motion for summary judgment.'" *Schechner v. KPIX-TV & CBS Broad.*, 686 F.3d 1018, 1022 (9th Cir. 2012) (citations omitted) (internal citation omitted).

A plaintiff either needs to (1) provide direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the adverse employment action or (2) prevail using the *McDonnell Douglas* burden shifting framework. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (explaining that a plaintiff "may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer].").

"On summary judgment, direct evidence of discrimination is that which, 'if believed, proves the fact [of discriminatory animus] without inference or presumption.'" *Hittle v. City of Stockton*, 76 F.4th 877, 888 (2023) (internal citation omitted). For example, to show a discriminatory motive through an employer's remarks, the remarks must be "clearly sexist, racist, or similarly discriminatory." *Id.* at 891. On this note, "[w]hen the plaintiff offers direct evidence of

4

discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin v. Hunt Wesson*, 150 F.3d 1217, 1221 (9th Cir. 1998).

On the other hand, if a plaintiff relies on circumstantial evidence, that evidence must be "specific and substantial" to defeat the employer's motion for summary judgment. *Id.* at 1222 (internal citation omitted).

"[T]he plaintiff at all times retains 'the ultimate burden of persuading the trier of fact' . . . that an employer's contested action was 'due in part or in whole to discriminatory intent . . . .'" *Opara v. Yellen*, 57 F.4th 709, 724 (9th Cir. 2023) (internal citations omitted). "Accordingly, where 'abundant and uncontroverted independent evidence' suggests that 'no discrimination . . . occurred,' plaintiff's 'creation of only a weak issue of fact as to whether the employer's reason was untrue' will not suffice." *Id.* (internal citation omitted).

## DISCUSSION

### I.    FAILURE TO TIMELY FILE COMPLAINTS WITH EEOC PRECLUDES TITLE VII SEX DISCRIMINATION CLAIMS FOR FAILURE TO PROMOTE BOIS TO SENIOR DIRECTOR OF MARKETING, LATIN AMERICA, IN 2019 AND FAILURE TO PROMOTE TO SENIOR DIRECTOR OF U.S. RETAIL MARKETING IN 2021.

Under Title VII, a plaintiff must submit their discrimination claim to the EEOC within 300 days of the allegedly discriminatory conduct. *See Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1846 (2019) ("As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the Equal Employment Opportunity Commission (EEOC or Commission)") (citing 42 U.S.C. § 2000e-5(e)(1), (f)(1)).

Here, the claims for failure to promote Bois to Senior Director of Latin America in late 2019 and Senior Director of U.S. Retail Marketing in May 2021 were not submitted to the Equal Employment Opportunity Commission within 300 days of the alleged discriminatory actions, *i.e.*, the dates when Hanlon and Uchrin were promoted over Bois. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (explaining that Title VII claims for discrete discriminatory

United States District Court
Northern District of California

acts must be filed within the EEOC's statute of limitations after such act "occurred").

Bois, in the company of her attorney, filed her EEOC claim on March 8, 2023, meaning actionable conduct must have occurred between May 13, 2022 and March 8, 2023. *See* Bois Dep., 168:22–170:9, Ex. 525, ECF 48. Bois' claims that Hanlon and Uchrin were promoted over her for discriminatory reasons occurred outside of the limitations period. Therefore, the Title VII claims related to such failures to promote are precluded by the applicable statutes of limitations. *See* 42 U.S.C. § 2000e-5(e)(1).

Plaintiff contends that the Continuing Violations doctrine tolls the statute of limitations because of a systematic pattern of discrimination against Bois. Pl.'s Reply in Supp. of Mot. for Summ J., ECF 75, at 9–10. However, the Continuing Violations doctrine is to be applied "sparingly." *Morgan*, 536 U.S. at 113. In *Morgan*, the Supreme Court established that,

> [D]iscrete discriminatory acts are not actionable if time barred, *even when they are related to acts alleged in timely filed charges*. Each discriminatory act starts a new clock for filing charges alleging the act. The charge, therefore, must be filed within the . . . 300–day period after the discrete discriminatory act occurred. *Id.* (emphasis added).

Here, the Court finds that each Title VII claim against LS&Co. for failing to promote Bois alleges a "discrete discriminatory action" that is easily identifiable and, thus, a separately actionable claim. *See id.* at 114 ("Discrete acts such as . . . failure to promote . . . are easy to identify. Each incident of discrimination and each . . . adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"); *see also Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003) ("Although the *effect* of the employer's rejection continues to be felt by the employee for as long as [s]he remains employed, that continued effect is similar to the continued effect of being denied a promotion . . . denials that *Morgan* offered as examples of a discrete act.") (citing *Elmenayer v. ADF Freight Sys.*, 318 F.3d 130, 134–35 (2d. Cir. 2003)).

*Morgan*, however, does not preclude independently discriminatory discrete acts under Title VII as long as the EEOC charges are timely filed. *Morgan*, 536 U.S. at 113. Further, prior acts of

discrimination may be used as "background evidence" in supporting such timely filed claims. *Id.* Although Bois' failure to promote to Senior Director, Latin America and Senior Director U.S. Retail Marketing Title VII claims are precluded by the late filing of the EEOC charge, the Title VII claims alleging failure to promote to Senior Director, Wholesale, in June 2022 are not time-barred under the statute of limitations. Plaintiff may use the evidence surrounding the time-barred claims in support of the surviving claim as background evidence.

**II.     FAILURE TO TIMELY FILE COMPLAINT WITH STATE CIVIL RIGHTS DEPARTMENT ONLY PRECLUDES THE FEHA CLAIM FOR FAILURE TO PROMOTE TO SENIOR DIRECTOR OF MARKETING IN LATIN AMERICA IN 2019.**

For a state law employment discrimination claim brought under the FEHA, the claim must be filed with the Civil Rights Department within *three years* of the unlawful practice. Cal. Gov. Code § 12960(e)(5) (2020). Accordingly, the Court also finds that the FEHA sex discrimination claims outside of the limitations period, namely failure to promote to Senior Director of Marketing, Latin America, is time-barred. The Court similarly finds that the Continuing Violations doctrine also does not apply to this claim brought under FEHA.

Under California's continuing violations doctrine, an employer may be liable for acts outside of the statute of limitations if they are "sufficiently connected to" unlawful conduct within the limitations period. *Hoglund v. Sierra Nev. Memorial-Miners Hosp.*, 102 Cal.App.5th 56, 71 (May 17, 2024). Conduct is "sufficiently connected" if "(1) the unlawful conduct occurring outside the statute of limitations is 'sufficiently similar in kind' to the unlawful conduct within the limitations period, (2) the unlawful actions have occurred with 'reasonable frequency,' and (3) they have not 'acquired a degree of permanence." *Id.* (internal citations omitted).

Here, conduct surrounding the failure to promote Bois to Senior Director of Marketing in Latin America in 2019, which occurred outside of the statute of limitations, is not "sufficiently connected" with the conduct surrounding the failure to promote to Senior Director of U.S. Retail Marketing in 2021 or Senior Director of Wholesale in 2022. *See* discussion, *infra*, Section III.C.2.

7

United States District Court
Northern District of California

(identifying genuine disputes of material fact surrounding the time-barred sex discrimination claim, which may be used as background evidence for the surviving claim).

First, the conduct between the claims is not "sufficiently similar" for a reasonable jury to draw a sufficient connection between each failure to promote claim. For example, the disputed discriminatory conduct surrounding the 2019 claim included comments that Doren would not place a woman in the Senior Director of Marketing in Latin America position. There is also a dispute over whether the Senior Director of Marketing in Latin America position required "channel marketing experience." *See id.*

The factual context surrounding both the 2021 and 2022 claims are significantly different than the 2019 claim. In the 2021 claim, the position did not require "channel marketing" experience. Rather, the issue in dispute is whether Bois was not promoted because of her pregnancy status or whether Uchrin was, in fact the "stronger" candidate.[1] *Id.*

Similarly, the conduct that occurred within the limitations period of the 2022 claim did not involve any affirmatively discriminatory statements based on Bois' sex, nor is it disputed that "channel marketing" experience was required for the Senior Director of Wholesale position.

The Continuing Violations doctrine does not apply to Bois' sex discrimination claims brought under FEHA because of the material factual differences between each of the alleged discrimination claims. *See Leiland v. City & Cty. of S.F.*, 576 F.Supp.2d 1079, 1096 (N.D. Cal. 2008) (finding conduct outside the limitations period not "sufficiently similar" where it arose from a different factual context than conduct within the limitations period).

Second, the attenuated temporal proximity of the alleged discriminatory conduct is another

---

[1] While Bois also argues that Jessica Reed and Eric Smith—two other LS&Co. employees promoted to Senior Director positions in the e-commerce department in 2022—were promoted before her, the Court finds that these promotions are not "sufficiently connected" because they occurred outside of Bois' area of interest and the scope of Doren's influence. Therefore, the mere fact that Reed and Smith were promoted to Senior Director positions is immaterial to the claims at hand and do not influence the Continuing Violations doctrine analysis.

reason the Continuing Violations doctrine does not apply. *See Brennan v. Townsend & O'Leary Enters.*, 199 Cal.App.4th 1336, 1354, n.4 (2011) ("On this record, we cannot see how the incidents of wrongful conduct relied upon by plaintiff in this action can be considered as continuing with reasonable frequency when the incidents are spaced apart no less than six months and sometimes more than a year.") Here, Bois brings three failure-to-promote claims from her eleven-year tenure at LS&Co. Each of her claims are based on events that occurred at least one year apart. The Court finds that a reasonable jury would not find that such "sufficiently similar" conduct continued unchanged and unabated throughout her tenure.

Third, the Court finds that each promotion decision was made with a "degree of permanence" that triggered the placed plaintiff on notice that such an adverse action had occurred, thus, would have triggered the statute of limitations. *See Morgan v. Regents of Univ. of Calif.*, 88 Cal.App.4th 52, 66 (2002) (holding that when a plaintiff learns that he or she would not be hired for a position, the act has the degree of permanence which should trigger an employee's awareness of and duty to assert their rights). This constitutes the third and final reason for which the Continuing Violations doctrine does not apply to the failure to promote to Senior Director of Marketing, Latin America, claim brought under FEHA.

Because Plaintiff's Motion for Summary Judgment, ECF 49, only concerns the failure to promote Bois to the Senior Director, Latin America position, and such claim is time-barred, the Motion is **DENIED-IN-FULL**. As a result of the statute of limitations to file the EEOC claim, Defendant's Motion for Summary Judgment, ECF 47, is **GRANTED-IN-PART** as it relates to the failure to promote Bois to Senior Director, Latin America, and Senior Director, U.S. Retail Marketing claim brought under Title VII. As reflected above, the 2021 claim brought under FEHA is not time-barred.

III.    **THE FEHA SEX DISCRIMINATION CLAIM FOR FAILURE TO PROMOTE TO SENIOR DIRECTOR OF U.S. RETAIL MARKETING IN 2021 AND THE TITLE VII AND FEHA CLAIMS FOR FAILURE TO PROMOTE TO SENIOR DIRECTOR OF WHOLESALE IN**

2022 SURVIVE SUMMARY JUDGMENT.

Title VII, in relevant part, prohibits employers from discriminating against an individual on the basis of sex. 42 U.S.C. § 2000e. Sex discrimination includes discrimination due to pregnancy, childbirth, or other related medical conditions. 42 U.S.C. § 2000e(k). "'Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work.'" *Young v. United Parcel Serv.*, 575 U.S. 206, 212 (2015) (quoting 42 U.S.C. § 2000e(k)). Similarly, FEHA prohibits, in relevant part, an employer from discriminating against an employee because of their sex, gender, or pregnancy status. Cal. Gov. Code § 12940(a).

"Because state and federal employment discrimination laws are similar, California courts apply the *McDonnell Douglas* burden-shifting framework to analyze disparate treatment claims under FEHA." *Merrick v. Hilton Worldwide*, 867 F.3d 1139, 1145 (9th Cir. 2017) (internal citation omitted).

First, the claimant must show a prima facie case for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973) ("The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination."). Second, if the claimant established the prima facie case, the burden of production shifts to the defendant to provide evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Third, if the defendant provided a legitimate nondiscriminatory reason, the burden of production shifts back to the claimant to provide evidence that the nondiscriminatory reason was pretextual. *Id.* at 804.

### A. Plaintiff Established a Prima Facie Case of Discrimination for the Failure to Promote to Senior Director of U.S. Retail Marketing Claim in 2021; However, There is a Genuine Dispute of Material Fact that Precludes Summary Judgment on the Failure-to-Promote to Senior Director of Wholesale in 2022 Brought Under Title VII and FEHA.

On first look, it may appear that Bois failed to make a prima facie case of employment

discrimination because Lauren Uchrin and Breanna Brandon, the employees who were promoted over Bois for each of the asserted claims, also belong to the protected class for which Bois is alleging the discrimination is based on. However, "[u]nder the traditional *McDonnell Douglas* test, the 'inference of discrimination' is not dependent upon examination of who, if anyone, was promoted instead of the plaintiff. *Diaz v. Am. Telephone & Telegraph*, 752 F.2d 1356, 1359 (9th Cir. 1985).

In the Ninth Circuit, a plaintiff may make a prima facie case of employment discrimination by showing gross statistical disparities or direct evidence of discrimination. *Heldt v. Tata Consultancy Servs.*, 132 F.Supp.3d 1185, 1190 (N.D. Cal. 2015). If no direct evidence is provided, a court may apply the *McDonnell Douglas* framework for which plaintiff bears the burden of establishing a prima facie case of discrimination.

To establish a prima facie case of discrimination, the claimant must establish that (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with similar qualifications were treated more favorably. *Godwin*, 150 F.3d at 1220. "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Id.* at 1220 (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

### 1.  *Bois Belongs to a Protected Class Based on Sex.*

It is undisputed that Bois is a woman, a mother, became pregnant with her second child in 2021, announced her pregnancy at LS&Co. in April 2021, and took maternity leave from August 2021 until December 2021. For these reasons, Bois belongs to a protected class based on her sex.

### 2.  *Bois Performed At or Above Her Employer's Expectations Prior to and Leading up to the Elevation Opportunities.*

Throughout her tenure at LS&Co., Bois had received two promotions, a nomination to the

Viola Leadership Program, a Korn Ferry 360 review, and had received consistently positive feedback in her performance reviews until her departure in 2023. Therefore, the second prong is satisfied.

### 3. *Bois Established an Adverse Employment Action when She Was Denied Promotion for Senior Director of U.S. Retail Marketing in 2021.*

Bois established that Lauren Uchrin, a former LS&Co. employee, was promoted to the Senior Director of U.S. Retail Marketing position one month after Bois announced her pregnancy.[2] Decl. Bois ¶ 7–8, ECF 66-1, at 3. Therefore, Bois established that she experienced an adverse employment action for failure to promote to Senior Director of U.S. Retail Marketing in May 2021.

### 4. *There is a Genuine Dispute of Material Fact over Whether Bois Was "Offered" the Senior Director of Wholesale Position in 2022.*

Bois argues that she suffered an adverse employment action when Breanna Brandon was hired for the Senior Director of Wholesale position in 2022. Failure to promote does constitute an adverse employment action. *See Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002). However, if Bois received a bona fide offer for the Senior Director of Wholesale position, it would preclude a prima facie discrimination claim based on a failure to demonstrate being denied a promotion. *See Bayus v. Nordstrom*, 262 Fed.Appx. 1 (9th Cir. 2007) (failing to establish failure-to-promote claim where the plaintiff was offered an interview for a position but declined it).

LS&Co. contends that Doren offered Bois the position. *See* Doren Dep. 122:21–123:14,

---

[2]    The Court notes that there are incorrect citations scattered throughout the parties' respective briefings. Such imprecision causes the Court unnecessary delay in its' review process. The example here is only one example of an inaccurate citation. *See* Pl.'s Opp. to Def.'s Mot. for Summ. J., ECF 62, at 5 (citing Bois Dep. 82:12–21, ECF 66-2, at 12, which refers to compensation statements out of context).
        Further, failing to cite the docket number to trace the evidence causes further burden on the Court, especially where, as here, the evidence is used to support multiple employment discrimination claims and is especially convoluted.

153:6–13, ECF 50-3, at 153 ("[Bois] was ready [for a promotion], you know, she was ready – ready earlier [than February 2023], otherwise I wouldn't have offered the wholesale – wholesale marketing role."). In her deposition, Doren stated that "we talked about [the offer] live, and we discussed it over e-mail." Doren Dep. 123:2–4, ECF 48, at 128. In an e-mail exchange on April 13, 2022, Bois wrote to Doren, "[t]hank you again for approaching me with the WS opportunity" and "[c]an you share the details of the offer?" Bois Dep., Ex. 519, ECF 48, at 86–87. On April 19, 2022, she wrote, "[w]anted to check in an see if you've heard anything from Alyssa regarding details of the offer …." and "[a]lso curious if there's been any more movement on other potential team changes that might unlock other opportunities…." *Id.*

Defendant further asserts that Bois cannot create a dispute of material fact by contradicting one's previous statements made over e-mail, citing *Silas v. Babbitt*, 96 F.3d 355, 358 (9th Cir. 1996) (rejecting reinstatement of land application under Alaska Native Allotment Act of 1906 where applicant contradicted application filed 14 years prior with new affidavit which stated a date of land occupation different from initial application).

The evidence shows that there was some verbal discussion between Doren and Bois about the Wholesale position and follow-up e-mail exchanges.  However, it remains an open question whether Doren made a bona fide offer to Bois in the conversation before the e-mail exchange or whether Doren had the requisite permissions to do so. For example, Doren's deposition shows that the promotion process at LS&Co. required both an employee's "personal readiness" and a "business need." Doren Dep. 24:17–19, 95:10–14, ECF 50-3, at 5 & 11. With this, Bois contends that she was never provided with an actual offer. *See* Bois Dep., 121:15–122:15, ECF 66-2, at 20–21 ("I was never given an offer."). After all, the e-mail exchange between Bois and Doren indicates that "elevating" the Wholesale marketing position required further approvals and that Doren was also interviewing other candidates. *See id.* 118:12–14, at 51 & Ex. 519, at 86.

This factual dispute is material inasmuch as a bona fide offer made prior to interviewing

United States District Court
Northern District of California

United States District Court
Northern District of California

other candidates would preclude Bois' prima facie claim based on failure to promote. Such open question is not to be determined by the Court here. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

If a jury decides that Bois did receive a bona fide offer from Doren, the finding would preclude a prima facie case of employment discrimination because Bois did not accept such offer when there was an urgency to fill the position. *See* Bois Dep., Ex. 519, ECF 48, at 86 (e-mail from Doren expressing her motivation to stabilize the wholesale team). In such event, judgment on the claim would be entered for defendant.

On the other hand, if Bois did not receive a bona fide offer from Doren, Bois would have provided sufficient evidence to establish that she experienced an adverse employment action, the third element of an employment discrimination under Title VII and FEHA.

### 5. The Candidates Promoted to Senior Director of U.S. Retail Marketing and Senior Director of Wholesale Marketing were Similarly Situated with Bois at the Time of Promotion.

For the failure to promote Bois to Senior Director of U.S. Retail Marketing in 2021 claim, it is not in dispute that Uchrin, like Bois, lacked "channel marketing" experience, at least at LS&Co. Further, Uchrin was hired at LS&Co. the same year as Bois and was rehired into Bois' former role of Director of Consumer Marketing by LS&Co. after leaving the company in 2017. These facts are sufficient to establish that Uchrin was similarly situated with Bois when she was promoted to Senior Director of U.S. Retail Marketing in 2021.

Bois also established that Brenna Brandon, the former LS&Co. employee who was rehired to the Senior Director of Wholesale Marketing position, was similarly situated to her.

Bois has fully established a prima facie case under FEHA for failure to promote to Senior Director of U.S. Retail Marketing in 2021. However, a genuine dispute of material fact over

whether Bois was "offered" the Senior Director of Wholesale Marketing position precludes summary judgment.

### B. LS&Co. Provides Evidence of Nondiscriminatory Motive for Not Promoting Bois to Senior Director of U.S. Retail Marketing in 2021 and to Senior Director of Wholesale in 2022.

Once a claimant establishes a prima facie case for discrimination, the burden of production shifts to the employer to prove a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802.

For the 2021 claim, LS&Co. provides evidence that Uchrin was the "stronger" candidate. In this regard, Doren stated that Uchrin was promoted "because of her consistent ability to deliver work product on time and/or ahead of schedule, strategic mindset, ability to anticipate business needs, efficiency, and skillful handling of difficult conversations when necessary." Decl. Doren, ECF 47-2, ¶ 9. This constitutes a nondiscriminatory reason for hiring Uchrin over Bois.

LS&Co. also puts forth nondiscriminatory reasons for hiring Brandon over Bois for the Senior Director of Wholesale position. Namely, that Bois was at least near the top of the candidate list but did not show that she was "all in" on the wholesale position. *See* Doren Dep. 127:13–22, ECF 48, at 132 ("[The Senior Director of Wholesale position] is a very important role within the organization and someone needs to be 100 percent committed and excited about the role. [Bois] was not.").

### C. Genuine Disputes of Material Fact Preclude Summary Judgment on the Failure-to-Promote to Senior Director of U.S. Retail Marketing Claim in 2021.

If the employer can demonstrate a legitimate nondiscriminatory reason, the burden of production shifts back to the claimant to show that the reason was pretextual. *McDonnell Douglas*, 411 U.S. at 804. "[A] claimant can show pretext in two ways: (1) indirectly, by showing that the employer's reason is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the

employer." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000) (internal citation omitted). "Although the inference of discrimination created from the prima facie case is gone, the evidence used in its establishment may be considered for examining pretext." *Lindsey v. SLT L.A.*, 432 F.3d 954, 962 (9th Cir. 2005) (citation omitted).

A plaintiff may use direct or circumstantial evidence to show pretext. "Only a small amount of direct evidence is necessary in order to create a genuine issue of material fact as to pretext." *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001) (internal citation omitted). However, circumstantial evidence of pretext must be "specific and substantial" to survive summary judgment. *Godwin*, 150 F.3d at 1222. "Comments suggesting that the employer may have considered impermissible factors are clearly relevant to a disparate treatment claim." *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990).

Here, there are genuine disputes of material fact that LS&Co.'s non-discriminatory reasons are pretextual. As previously stated, the evidence used to support plaintiff's time-barred claims may be used as circumstantial evidence to support the surviving claim. *See* discussion, *supra*, Part I. There remain genuine disputes of fact arising out of the evidence used to support the time-barred discrimination claims. As such, these must be resolved by the factfinder.

### 1. There is a Genuine Dispute of Material Fact that Doren Did Not Promote Bois to the Senior Director of Latin America Position in 2019 Because She is a Woman.

From the time-barred claim, Bois argues that she was not promoted to the Senior Director of Latin America position in 2019 because of her sex. Instead, LS&Co. hired Curtis Hanlon, who had "channel marketing" experience. It is not in dispute that Doren told Bois on two occasions that she would not place a woman in that position. [3] Jt. Statement of Undisputed Facts, ECF 88, ¶ 21.

---

[3] In the statement of undisputed facts, LS&Co. stated that the fact of whether Doren made the statements is only undisputed at the summary judgment stage.

United States District Court
Northern District of California

However, LS&Co. claims that Doren made such statements in good faith because Doren believed that working women could face oppression in the Latin America region for cultural reasons. *Id.* ¶ 22.

Turning to the material factual dispute, LS&Co. asserts that Hanlon was promoted to Senior Director because of "channel marketing" experience that Bois lacked. *See* Decl. Doren, ECF 47-2, ¶ 8 ("[Bois] was never even a potential candidate to be Senior Director, Marketing in Latin America because that role required existing channel marketing experience, which Ms. Bois did not have in 2019 when the position opened."); Doren Dep. 63:6–23, ECF 50-3, at 6. Bois, however, contests that defendant "made up" the channel marketing requirement after Hanlon had already been promoted. *See* Decl. Bois, ECF 63, ¶ 5 ("[Doren] never indicated any other reason that I could not be considered [for the Senior Director of Latin America role], such as my own 'readiness' or 'qualifications.'"). The questions of fact over whether the position of Senior Director of Marketing, Latin America, required channel marketing experience is a question for the factfinder. Such finding may be used to support an inference that Bois was not promoted to the Senior Director of Marketing in Latin America because of her sex, and therefore, background evidence that LS&Co. had a discriminatory motive in the surviving claim.

Any facts arising out of the 2019 claim may only be used as circumstantial background evidence to support an inference of discrimination for the 2021 and 2022 claims. Whether the evidence provided by the plaintiff is sufficient to prove pretext is for a jury to determine.

### D.  The Same Actor Inference

"The same actor inference is a 'strong inference' that a court must take into account on a summary judgment motion." *Schechner v. KPIX-TV*, 686 F.3d 1018, 1026 (9th Cir. 2012) (applying the same actor inference where defendant signed plaintiff to new contract less than two years prior to plaintiffs' lay off). The "strong inference" weighs in favor of a nondiscriminatory motive where the "same actor" who is responsible for the alleged discriminatory conduct was also

responsible for a favorable employment action within "a few years" prior. *Id.* (rephrased). "The inference applies to favorable employment actions other than hiring, such as promotion."[4] *Id.*

LS&Co. argues that the same-actor inference applies because Doren is the same person who helped Bois get promoted in 2014 and 2017. The evidence in this case shows that Doren was not necessarily the *only* decision maker, but also gives rise to an inference that Doren was the primary vector for recommending a candidate up-the-ladder to request business approval for a promotion in Bois' department. *See* Bois Dep. 21:3–14, ECF 48, at 15.

On one hand, Doren was influential in Bois' promotions in 2014 and 2017. These promotions occurred at least 4 years prior to the adverse actions in 2021 and 2022. The Court finds that the same actor inference does not apply based only on the time that had lapsed, and the potential to develop discriminatory bias, between the years 2017 and 2022.

LS&Co. also notes that Doren nominated Bois to the Viola Leadership Program in 2019. The nomination, although a positive gesture and workplace accomplishment, pales in comparison to a favorable employment action such as receiving a promotion, especially to the highly competitive senior-director level. The nomination does not significantly impact the analysis of whether the Same Actor inference applies here. The Court finds this a neutral consideration.

On the other hand, the evidence shows that LS&Co. was prepared to terminate Bois as a result of the economic downturn caused by the Covid-19 pandemic in May 2021. Doren Dep.

---

[4] There is significant scholarly literature questioning the appropriacy of the "same actor" inference in making a dispositive determination on the pleadings, at the summary judgment stage, or at trial because of inconsistencies with psychological literature on how discrimination manifests. *See* Victor D. Quintanilla & Cheryl R. Kaiser, *The Same-Actor Inference of Nondiscrimination: Moral Credentialing and the Psychological and Legal Licensing of Bias*, 104:1 CAL. L. REV. 1 (2016) (describing the inference as an "interstitial" doctrine that lacks textual support in Title VII; then, calling for the evidence supporting the inference to be considered by a fact-finder rather than a conclusive presumption that applies as a matter of law); *see also Husman v. Toyota Motor Credit Corp.*, 12 Cal.App.5th 1168, 1188–89 (2017) (explaining why the same actor inference has lost its' persuasive influence in recent years).

United States District Court
Northern District of California

73:16–76:20, ECF 48, at 117–19. However, Doren withheld the news from Bois because Bois had prepared to take maternity leave. *Id.* Doren sought and received approval to withhold this information until Bois returned from maternity leave. *Id.* 82:8–10, ECF 48, at 123. Then, in Fall 2021, just prior to Bois' return, Doren again took affirmative action to "save" Bois' position at the company. *Id.* 82:2–21, ECF 48, at 123. The Court finds that these actions are enough to tip the scales for the same actor inference to apply. Doren appears to have acted in the best interests of Bois when there was no obligation to do so.

Additionally, Bois was in-line to receive a promotion in mid-2023. *Id.* 147:2–149:8, at 140–42; Ex. 2., at 150–51. Although the alleged discriminatory conduct occurred in 2021 and 2022, the evidence shows Doren was leading the effort to promote Bois to Senior Director in 2023. This evidence lends further support to the Court's finding that the same actor inference applies, where Plaintiff was a beneficiary of favorable employment actions, albeit unknowingly, at the hands of Doren.

Under Ninth Circuit precedent, to overcome the same actor inference, Bois must make "an extraordinarily strong showing of discrimination." *Blair v. Shulkin*, 685 Fed.Appx. 587, 588 (9th Cir. 2017) (internal citation omitted). When relying on circumstantial evidence to rebut the same actor inference, it must be "specific and substantial" to withstand an employer's motion for summary judgment. *Godwin*, 150 F.3d at 1222. Here, there are genuine disputes of material fact on evidence that Bois presents to rebut the same actor inference and LS&Co.'s nondiscriminatory reasons for failing to promote Bois to the Senior Director of Wholesale position. *See* discussion, *supra*, Sections III.A.4. & III.C.1. Such questions must be resolved by the factfinder.

## IV.    SUMMARY JUDGMENT IS GRANTED IN FAVOR OF LS&CO. FOR THE AGE DISCRIMINATION CLAIM.

As an initial matter, Bois' age discrimination claims based on the failure to promote to Senior Director of Marketing in Latin America in 2019 and Senior Director of U.S. Retail

Marketing in May 2021 fail as a matter of law because Bois did not turn 40 until August 2021. Jt. Statement Undisputed Facts, ECF 88, ¶ 42, at 5. *See* 29 U.S.C. § 631(a) (limiting the protections of the ADEA to individuals at least 40 years of age).

The remaining ADEA claim does not survive summary judgment because plaintiff failed to present any direct evidence of age discrimination and there is no genuine issue of material fact that the persons promoted were "substantially younger" than the plaintiff. *See France v. Johnson*, 795 F.3d 1170, 1174 (9th Cir. 2015).

### A.      Bois Fails to Provide Direct Evidence of Age Discrimination.

"'Direct evidence, in the context of an ADEA claim, is defined as evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the fact finder to infer that the attitude was more likely than not a motivating factor in the employer's decision.'" *France*, 795 F.3d at 1173 (listing cases); *see, e.g.*, *Opara*, 57 F.4th at 725 (finding direct evidence in comments "if anyone is too old to do this job, she should quit" and "the job was better with young people").

Here, Bois argues that Doren's comments about her "lack of excitement" and need for someone "100 percent committed" to the Senior Director of Wholesale position constitutes direct evidence of age discrimination. Pl.'s Opp. to Def's Mot. for Summ. J., ECF 62, at 15. However, the Court finds that such evidence does not clearly reflect an alleged discriminatory attitude such that a jury could find that Doren was most likely motivated by Bois' age when Bois was not promoted to Senior director of Wholesale.

### B.      Plaintiff Fails to Establish a Prima Facie Case of Age Discrimination.

Where direct evidence is not presented, a plaintiff may rely on the *McDonnell Douglas* burden shifting framework to overcome an employer's motion for summary judgment. *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012).

A prima facie case of age discrimination requires a showing that the claimant makes a

20

prima facie case of disparate treatment by demonstrating that (1) the claimant was at least forty years old, (2) the claimant was performing her job satisfactorily, (3) the claimant was denied for a promotion for which she applied, and (4) the chosen candidate is "substantially younger" than the claimant. *France*, 795 F.3d at 1174.

Regarding the first two prongs, it is undisputed that Bois was 40 years old when she was not promoted to Senior Director of Wholesale in 2022 and that she was performing at or above expectations in her role as Director of U.S. Retail Marketing at that time.

For the third prong, there is a genuine dispute of material fact over whether plaintiff "applied" for the Senior Director of Wholesale position or whether she needed to apply. As stated above, it is disputed that Doren "offered" Bois the position without requiring an application or an interview. *See* discussion, *supra*, Section III.A.4.

Such dispute of fact, however, does not itself preclude summary judgment because plaintiff has failed to present evidence that Breanna Brandon, the candidate promoted to Senior Director of Wholesale, is "substantially younger" than Bois, and, therefore, cannot establish a prima facie case of age discrimination. Bois argues that Brandon was under 40 years of age at the time of her promotion. However, "the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996).

Plaintiff has failed to establish a prima facie case of employment discrimination where she has not provided the relative ages of the candidate who was promoted. Therefore, the Court **GRANTS-IN-PART** summary judgment in favor of LS&Co. for the ADEA claim.

### V.    SUMMARY JUDGMENT IS GRANTED IN FAVOR OF LS&CO. FOR THE EQUAL PAY ACT CLAIM.

The California Equal Pay Act ("EPA") provides that employees who are performing equal work are to be paid equal ages without regard to sex. Cal. Lab. Code, § 1197.5(a). To prove an

EPA violation, a claimant must establish that the employer pays different wages to employees doing substantially similar work under substantially similar conditions based on sex. *Hall v. Cty. of L.A.*, 148 Cal.App.4th 318, 323–24 (2007). If a prima facie showing is made, the burden shifts to the employer to prove the disparity is permitted by one of the EPA's statutory exceptions. *Id.*; *see* Cal. Lab. Code, § 1197.5(a)(1) (listing exceptions). If an exception is established, the burden shifts back to the claimant to prove pretext. *Hall*, 148 Cal.App.4th at 324.

### A. Plaintiff Fails to Establish a Prima Facie Case of an EPA Violation.

Plaintiff argues that LS&Co. violated the EPA because they failed to promote her over similarly situated men. However, "[the] EPA was not… intended to address the situation where the employer pays different wages to two different job classifications, each of which include both men and women." *Hall*, 148 Cal.App.4th at 325. To prove a prima facie case of discrimination under the EPA, "a plaintiff must show 'not only that she was paid lower wages than a male comparator for equal work, but that she has selected the proper comparator." *Allen. v. Staples*, 84 Cal.App.5th 188, 194 (2022). Here, Bois does not argue that she was paid less than males of similar corporate rank but is comparing her pay to men who were promoted to Senior Director. Bois fails to compare her pay to a male of equal corporate rank, thus, fails to establish a prima facie case.

Bois also argues that she was not paid at the maximum of the pay range when she offered the lateral position in 2019. However, any potential EPA claims arising from 2019 payments is time-barred because the statute of limitations for California EPA claims is two years, or three years if a willful violation can be shown. Cal. Lab. Code § 1197.5(i).

Even if the claims were not time barred, Bois does not offer any similarly situated male individuals who were paid differently. Additionally, the e-mail chain to which Bois refers shows that her salary was within the pay scale for her position. Further, the evidence shows that Doren raised Bois' pay after LS&Co. re-hired Uchrin.

22

Defendant's Motion for Summary Judgment, ECF 47, is **GRANTED-IN-PART** as it relates to the Equal Pay Act violation.

### VI.    THE CLAIM FOR LATE DISTRIBUTION OF PAYROLL RECORDS IS DISMISSED FOR LACK OF STANDING.

If an employee requests to inspect or receive a copy of their payroll records, the employer must comply with the request within 21 days. Cal. Lab. Code § 226(c). Failure to do so entitles the employee to recover a seven-hundred and fifty-dollar ($750) penalty from the employer. Cal. Lab. Code § 226(f).

Here, defendant conceded that they sent Bois her payroll records nine days after the 21-day deadline. Defendant also issued a check in the amount of seven-hundred and fifty-dollars ($750), which is in Bois' possession. Transcipt of Hr'g on April 30, 2024. Plaintiff did not argue the claim in her opposition brief and conceded that such injury had been redressed at the hearing. *Id.* Therefore, the Court **DISMISSES** the claim for violation of California Labor Code Section 226(c) for lack of standing because the injury has already been redressed. *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 657 (9th Cri. 2002) (holding that the plaintiffs' claims are moot because they are not redressable); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970, n.7 (9th Cir. 2018) (citing a Seventh Circuit decision that found a plaintiff lacked standing where the injury was already redressed).

### VII.    THERE IS A GENUINE DISPUTE OF MATERIAL FACT OVER WHETHER PLAINTIFF WAS CONSTRUCTIVELY DISCHARGED.

First, regarding the statute of limitations for constructive discharge claims brought under Title VII, contact with the EEOC must be made within 45 days after the alleged discriminatory action, *i.e.*, the employee's resignation. *Green v. Brennan*, 578 U.S. 547, 550 (2016). Here, Bois filed her complaint with the EEOC and the California Civil Rights Department on the same day as her resignation, thus, the constructive discharge claim is not time-barred.

"The constructive-discharge doctrine contemplates a situation in which an employer

discriminates against an employee to the point such that [her] 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 578 U.S. 547, 555 (2016). A constructive discharge claim requires two elements: (1) an employee experienced discrimination by her employer to the point where an objectively reasonable person in her position would have resigned, and (2) actual resignation. *See id.*; *see also Watson v. Nationwide Ins. Co.*, 823 F.2d 360 (9th Cir. 1987) (clarifying that a constructive discharge claim requires an "objective" standard rather than a "subjective" one). Constructive discharge claims are, therefore, analyzed on a case-by-case, factually dependent basis. *Watson*, 823 F.2d at 361.

In this case, there is a genuine dispute of material fact over whether plaintiff resigned because of intolerable working conditions.

On one hand, Bois' theory is that LS&Co. dangled a carrot for her to chase since 2019–2020. *See* Bois Dep., Ex. 521, ECF 61, at 30 ("[Doren] felt confident within a year [of stepping into the retail role in late 2019] the position would be elevated."). Throughout her tenure, Bois witnessed seven of her colleagues, some of whom Doren claimed were unqualified for promotion, get promoted. Decl. Bois. ¶ 9, ECF 49-7, at 2. There is evidence that Bois was the only marketing director who had not been promoted at the time she resigned in 2023, despite her qualifications and "personal readiness." *Id.*; *see* Doren Dep. 122:21–123:14, 153:6–13, ECF 50-3, at 153 ("[Bois] was ready [for a promotion], you know, she was ready – ready earlier [than February 2023] . . . ."). She had received numerous positive performance reviews, at least on par with those for other director-level employees who were promoted before her. *See* Decl. Schiller, Ex. E., ECF 50-4 (Hanlon Review); Decl. Bois, Exs. A.–C., ECF 50-5–50-7 (Bois Reviews).

When Bois sought transparency on the topic of her promotion or inquired about the promotion of others before her, the responses she received were opaque, which caused her severe distress. For example, during a discussion with Chief Marketing Officer Karen Riley Grant, Bois

24

was left without answers for why Jessica Reed and Eric Smith were promoted "out of cycle." Bois Dep. 204:3–205:8, ECF 66-2, at 28–29. Additionally, Uchrin made Bois an empty promise to fill out a promotion request for Bois in November 2022. Decl. Bois ¶ 12, ECF 66-1, at 3–4. Bois and Uchrin had a mutual understanding that Bois would fill out the promotion paperwork for Tommy Hilton while Uchrin would do the same for Bois. *Id.* However, when Hilton's promotion was approved in January 2023, Bois inquired about her promotion with Uchrin, who seemed to act ignorant of the conversation. *Id.* ¶ 13, at 4. Bois later learned, via e-mail, that Uchrin had never received the approvals to fill out her promotion form. Decl. Schiller, ECF 66-2, Ex. G. at 51–54. Bois was unaware of the lack of approvals, which further contributed to her frustration.

On the other hand, LS&Co. points to Bois testimony that she "loved" the LS&Co. brand and had developed very strong relationships while working at the company. Bois Dep. 245:4–246:10, ECF 48, at 65–66. LS&Co. also argues that Bois resignation was "concocted" by her counsel. *See* Def.'s Mot. for Summ. J. § III.G., ECF 47, at 13.

The Court finds that Bois has provided enough evidence to support a genuine issue of material fact that the working conditions at LS&Co. were "objectively intolerable" to support a finding that her resignation was, in fact, a constructive discharge. Therefore, the Court **Denies-in-Part** LS&Co.'s Motion for Summary Judgment for the constructive discharge claim.

**CONCLUSION**

For the reasons set forth herein, the Court **Grants-in-Part** and **Denies-in-Part** defendant LS&Co's Motion for Summary Judgment, ECF 47. The Motion is **Granted** with regard to the Title VII and FEHA failure to promote to Senior Director of Marketing in Latin America in 2019 and Title VII failure to promote to Senior Director of U.S. Retail Marketing in 2021 based on sex because such claims are time-barred. The Motion is **Denied** with respect to the FEHA claim for failure to promote to Senior Director of U.S. Retail Marketing in 2021 and the Title VII and FEHA claim for failure to promote to Senior Director of Wholesale in 2022 based on

sex because there are genuine disputes of material fact that must be resolved by a jury. The Motion is **GRANTED** with regard to all the ADEA claims and the EPA claim. The failure to timely provide pay statements claim in violation of California Labor Code Section 226(c) is **MOOT** for lack of standing because the injury has already been redressed. The Motion is **DENIED** with respect to the constructive discharge claim.

Accordingly, plaintiff Julia Bois' Cross-Motion for Summary Judgment, ECF 49, is **DENIED-IN-FULL** as it only addresses time-barred sex discrimination claims.

This order resolves ECF 47 and ECF 49.

**IT IS SO ORDERED.**

Dated: July 29, 2024

TRINA L. THOMPSON
United States District Judge