United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA BOIS, | Case No. 23-cv-02772-TLT |
| Plaintiff, | |
| v. | **ORDER RE MOTIONS IN LIMINE AND BIFURCATION OF TRIAL** |
| LEVI STRAUSS & CO., | Re: ECF 107, 108, 109, 111, 120 |
| Defendant. | |

Before the Court are Plaintiff Jula Bois's and Defendant Levi Strauss & Company ("LS&Co.")'s motions *in limine* ("Motion" or "Motions"). Defendant brings three Motions. ECF 107, 108, 109. Plaintiff brings one Motion. ECF 111. The parties also raise the issue of bifurcating the trial in their pretrial statement and in oral argument during the pretrial conference on March 27, 2025 and March 31, 2025. ECF 120, at 9; ECF 138, 141. Finally, the parties dispute whether the issue of managing agent may be resolved by the Court as a matter of law ahead of trial. ECF 120, at 7. The Court will address these issues in this order.

As an initial matter, Plaintiff has repeatedly violated Court orders and missed deadlines leading up to the pretrial conference. [1] ECF 115 (unilaterally filing individual pretrial statement in violation of Court orders); ECF 120 (filing joint pretrial statement six days after deadline); *id.* (failing to include exhibit list and objection and instead listing every document produced by each party); ECF 116 (failing to provide witness list to Defendant until March 1, 2025—one after the pretrial statement was due); ECF 122 (failing to meet own self-imposed objection deadline of March 7, 2025); ECF 125 (failing to provide exhibit list to Defendant until March 8, 2025—eight

---

[1] The Court notes that the parties' inability to agree on the scope of litigation played a role in the initial delay, but Plaintiff's unilateral filing and subsequent delays are not related to this disagreement. Plaintiff's failure to adhere to deadlines has been an issue throughout this action. *See, e.g.*, ECF 35.

days after it was due to the Court and one day after Plaintiff's self-imposed deadline).  These repeated failures come after the Court continued the pretrial conference three times upon the joint request of the parties.  ECF 96, 99, 101.  Because of Plaintiff's repeated violations, the Court ordered deadlines for the parties to follow prior to the pretrial conference.  ECF 122.

After review and consideration of motion, briefings, attachments and exhibits thereto, the Motions are **GRANTED-IN-PART** and **DENIED-IN-PART**.  The Court's rulings on each individual Motion are summarized at the end of this Order.

After consideration of the parties' oral arguments, the Court **ORDERS** bifurcation of the issue of liability and damages.  The jury will first determine the issue of liability.  If necessary, after an intermission, the same jury will determine the issue of damages.

## I.    BACKGROUND

### A.    Procedural History

On June 5, 2023, Plaintiff filed a complaint alleging the following claims against Defendant: (1) violation of Title VII for discrimination on the basis of sex and pregnancy; (2) violation of Age Discrimination in Employment Act ("ADEA") for discrimination on the basis of age; (3) violation of California Fair Employment and Housing Act ("FEHA") for discrimination on the basis of sex, age, and pregnancy; (4) violation of the California Equal Pay Act ("EPA") for discrimination on the basis of sex; and (5) violation of California Labor code § 226(c).  ECF 1, ¶¶ 62–84.

The parties experienced numerous disputes throughout discovery, largely due to Plaintiff's failure to cooperate.  ECF 35.  The fact discovery cut-off was set for November 27, 2023.  ECF 31, at 2.  Nearing the end of fact discovery, as of November 8, 2023, Plaintiff had failed to produce a single document despite numerous requests by defense counsel, and Plaintiff's counsel was slow to respond to (and in some instances simply ignored) defense counsel's attempts to schedule Plaintiff's deposition.  *Id.* at 2 n.1.  A court order was required to get Plaintiff to sit for a deposition.  *Id.* at 1.

On January 23, 2024, the parties filed motions for summary judgment.  ECF 47, 49.  After the Court's order granting-in-part and denying-in-part the parties' motions for summary judgment,

United States District Court
Northern District of California

the scope of the litigation is as follows: (1) whether Defendant failed to promote Plaintiff to the Senior Director of U.S. Retail Marketing role in 2021 ("2021 promotion") because of her sex, (2) whether Defendant failed to Plaintiff to the Senior Director of Wholesale Marketing role in 2022 ("2022 promotion") because of her sex, and (3) whether Plaintiff was constructively discharged—relevant only to her damages.  ECF 94, at 25–26.

Plaintiff's pregnancy discrimination theory remains a relevant factor.  *Id.*  The Court's order does not eliminate the availability of punitive damages.  *Id.*

Plaintiff's remaining claims are (1) violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900, et seq., for the 2021 and 2022 promotions and (2) violation of Title VII, 42 U.S.C. § 2000e, et seq., for the 2022 promotion.  *Id.*

Prior to the pretrial conference, both parties filed motions *in limine*.  Defendant brings three Motions.  ECF 107, 108, 109.  Plaintiff has filed an opposition to each Motion.  ECF 126, 128, 129.  Plaintiff brings one Motion.  ECF 111.  Defendant filed an opposition and an objection to the Motion.  ECF 123, 124.  The Court heard oral argument regarding the Motions at the pretrial conference on March 27, 2025 and on March 31, 2025.  ECF 138, 141.

In their pretrial statement, the parties also dispute the issue of bifurcating the trial into a liability phase and a damages phase and whether the issue of managing agent may be decided by the Court ahead of trial as a matter of law.  ECF 120, at 8–9.  The Court heard oral argument regarding the issues at the pretrial conference on March 27, 2025 and March 31, 2025.  ECF 138, 141.

### B.    Factual History

Bois is a woman and mother of two who worked for Saco. from 2012 to 2023.  ECF 88, ¶¶ 1–2, 34.  In 2012, Bois began her career with LS&Co. as an employee in the Marketing department, where she was recognized for her successes throughout her tenure.  *Id.* ¶ 2.  She was promoted to Senior Manager of Brand Marketing in 2014—the same year Bois had her first child—and to Director of U.S. Consumer Marketing in 2017.  *Id.* ¶¶ 6–7, 34.  Her supervisor, Stacy Doren, was influential in both promotions.  *Id.*

1    As Bois moved up the corporate ranks, she received a nomination to the Viola Leadership

2    Program, a program for "female talent." *Id.* ¶ 9.  She received a "Korn Ferry 360" review, which

3    indicated to Bois that she was ready for a promotion to Senior Director.  *Id.* ¶¶ 6–7, 9, 29–30.

4    In 2019, Bois discussed a Senior Director position in Latin America with Doren.  *Id.* ¶ 19.

5    During the discussions, Bois alleges that Doren told her that she could not put a woman in Latin

6    America, citing cultural challenges.  *Id.* ¶¶ 19–22, 28.  Curtis Hanlon, another LS&Co. employee,

7    was promoted to the position.  *Id.* ¶ 18.  Bois accepted a "lateral" move into Hanlon's old position,

8    Director of U.S. Retail Marketing at Doren's recommendation.  *Id.* ¶¶ 24–25.  Doren emphasized

9    Bois' need for "channel marketing" experience, which her new position provided.  *Id.* ¶ 25.

10   Around this time, Bois also started seeing Dr. William Quick, M.D.  ECF 111-1, Deposition of

11   Julia Bois ("Bois Tr.") at 266:11–17.

12   In 2020, LS&Co. rehired Lauren Uchrin, a former LS&Co. employee, for Bois' former

13   position, the Director of U.S. Consumer Marketing.  ECF 88, ¶ 31.  Uchrin is the same age as Bois

14   and has two children.  *Id.* ¶¶ 33, 35.  Both children were born during Uchrin's initial tenure at

15   LS&Co.  *Id.*  Uchrin and Bois shared a nanny.  *Id.* ¶ 36.

16   In April 2021, Bois announced her second pregnancy.  *Id.* ¶ 37.  Roughly one month later,

17   Uchrin received a promotion to Senior Director of U.S. Retail Marketing.  *Id.* ¶ 38.  Doren told

18   Bois that her decision was based, in part, on her relative "work capacity."  *Id.* ¶ 39.  In August

19   2021, Bois gave birth to her second child.  *Id.* ¶¶ 42–43.

20   Bois returned from maternity leave in December 2021 and in Spring 2022, the role of

21   Senior Director of Wholesale Marketing became vacant.  *Id.*  ¶¶ 43–44.  However, Breanna

22   Brandon, another former LS&Co. employee, was rehired into the position.  *Id.* ¶ 45.  Bois also

23   learned that two employees in the e-commerce unit, Jessica Reed and Eric Smith, were each

24   promoted to Senior Director positions in 2022.  *Id.* ¶ 47.

25   By September 2022, Bois questioned why many of her colleagues had received Senior

26   Director promotions and, despite her accolades, she had not.  *Id.* ¶ 46.  She approached Uchrin

27   with her concern, and then, Karen Riley Grant, LS&Co.'s Chief Marketing Officer.  *Id.* ¶¶ 46, 48.

28

United States District Court
Northern District of California

4

1  Karen Riley Grant told Bois that the Smith and Reed promotions were not supposed to have

2  happened when they did.  *Id.* ¶ 48.

3         In November 2022, Uchrin advised Bois that she would be submitting a promotion request

4  for Tommy Hilton, another LS&Co. employee.  *Id.* ¶ 49.  In late January 2023, Uchrin notified

5  Bois that Hilton's promotion had been approved and did not address the topic of Bois' promotion.

6  *Id.*  Bois submitted her resignation[2] on March 8, 2023, one month after receiving a "Great Year"

7  performance review from Uchrin.  *Id.* ¶¶ 48, 50–51.

## II.   THE ISSUE OF MANAGING AGENT

9         In the pretrial statement, for disputed facts 5, 6, and 7, Defendant argues that the issue of

10 who is a managing agent is a legal issue that the Court should resolve prior to trial.  The law does

11 not impute every employee's malice to a corporation, for purposes of awards of punitive damages,

12 and instead, punitive damages statute requires proof of malice among corporate leaders, who are

13 the corporation's officers, directors, or managing agents.  *Cruz v. HomeBase*, 83 Cal. App. 4th

14 160, 167 (Cal. Ct. App. 2000) (citing Cal. Civ. Code § 3294(b)).  The issue of whether Doren was

15 a managing agent for the 2021 and 2022 promotion and whether Uchrin was a managing agent for

16 the 2022 promotion pertains to the availability of punitive damages under Plaintiff's FEHA claim.

17        "Generally, principal liability for punitive damages does not depend on employees'

18 managerial level, but on the extent to which they exercise substantial discretionary authority over

19 decisions that ultimately determine corporate policy."  *CRST, Inc. v. Superior Ct.*, 11 Cal. App.

20 5th 1255, 1273 (Cal. Ct. App. 2017), *as modified* (June 19, 2017) (internal quotations omitted)

21 (citing *White v. Ultramar, Inc.*, 21 Cal.4th 563, 576–77 (1999)).  "Thus, to establish that an

22 individual is a managing agent, a plaintiff seeking punitive damages must show that the employee

23 exercised substantial discretionary authority over significant aspects of a corporation's business."

24 *Id.* (internal quotations omitted).  Whether an employee supervises a large number of employees

25 or has supervisory power to terminate employees does not by itself "render the employee a

26

27 _____

28 [2] Plaintiff alleges that she was constructively discharge.  ECF 1, ¶ 60.  Plaintiff's deposition
testimony suggests that it was Plaintiff's attorney, Joshua Schiller, who suggested Plaintiff should
resign.  ECF 48, Bois Tr. at 45:13–46:7.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    managing agent." *Id.* Rather, "[t]he key inquiry . . . concerns the employee's authority to change

2    or establish corporate policy." *Id.*

3         The issue of managing agent may be decided as a matter of law. *See Cruz*, 83 Cal. App.

4    4th at 168 (reversing punitive damages verdict in which there was no evidence that the employee

5    was an officer, director, or managing agent). However, Defendant did not challenge the issue of

6    managing agent during the motion for summary judgment. *See* ECF 94. Because the issue of

7    managing agent remains outstanding, the question will go to the jury. The California model jury

8    instructions provide the following: "An employee is a 'managing agent' if the employee exercises

9    substantial independent authority and judgment in corporate decision-making such that the

10   employee's decisions ultimately determine corporate policy." 2025 California Civil Jury

11   Instructions ("CACI") No. 3946. The Court will issue this jury instruction.

## III.    BIFURCATION

13        The Court, in furtherance of convenience or to avoid prejudice, or when separate trials

14   will be conducive to expedition and economy, may order a separate trial of any claim . . . ." Fed.

15   R. Civ. P. 42(b). These are independent reasons, any one of which is sufficient to order

16   bifurcation. *Boone v. City of Los Angeles*, 522 F. App'x 402, 403 (9th Cir. 2013) ("Rule 42(b)

17   authorizes district courts to bifurcate a trial for any one of the following reasons: (1)

18   "convenience," (2) "to avoid prejudice," or (3) "to expedite and economize."). The federal rules

19   of civil procedure "shall be construed and administered to secure the just, speedy, and inexpensive

20   determination of every action." Fed. R. Civ. P. 1.

21        Whether to bifurcate is left to the sound discretion of the district court. *See Hangarter v.*

22   *Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004); *Jinro Am. Inc. v. Secure*

23   *Investments, Inc.*, 272 F.3d 1289 (9th Cir. 2001). A district court's decision to order separate trials

24   may be set aside only for an abuse of discretion. *De Anda v. City of Long Beach*, 7 F.3d 1418,

25   1421 (9th Cir. 1993). A court may bifurcate *sua sponte*. *In re Paoli R.R. Yard PCB Litig.*, 113

26   F.3d 444, 452 n.5 (3d Cir. 1997).

27        In the pretrial statement, the parties dispute whether the trial should be bifurcated into two

28   phases: liability and damages. ECF 120, at 9. Defendant argues that evidence relevant to a

1    punitive damages valuation is not relevant to the issues of liability and is unduly prejudicial and

2    presents an undue consumption of resources unless the jury first finds there is an entitlement to

3    punitive damages. *Id.* Plaintiff opposes bifurcation, arguing that it would be an unnecessary and

4    inefficient exercise requiring the Court to re-seat a new jury. *Id.* at 10.

5        Here, the Court finds that bifurcation into liability and damages phases with the same jury

6    is warranted. The damages in dispute are compensatory damages based on constructive discharge

7    including back pay, front pay, lost benefits, emotional and physical distress and mental anguish

8    and punitive damages. Based on the parties' pretrial filings, the evidence relevant to damages

9    valuation are not relevant to the issues of liability and risks confusing the jury.

10       Further, the jury instructions for the remaining claims risk confusing the jury. Specifically,

11   Plaintiff's remaining causes of action are Title VII and FEHA. ECF 121. However, the jury

12   instructions for liability and punitive damages require different burdens of proof. *See* 9th Cir.

13   Model Instruction 10.1 (preponderance of the evidence); 9th Cir. Model Instruction 5.5

14   (preponderance of the evidence); CACI No. 3946 (clear and convincing evidence). The Court

15   finds that "[f]or convenience, to avoid prejudice, [and] to expedite and economize" bifurcation is

16   warranted. Fed. R. Civ. P. 42(b); *see Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th

17   Cir. 2016) (finding that a district court may bifurcate the issues of liability and damages); *Bates v.*

18   *United Parcel Service*, 204 F.R.D. 440, 448–49 (N.D. Cal. 2001) (same).

19       The Court **ORDERS** bifurcation of the trial into two phases: liability and damages. In the

20   first phase, the jury will determine liability of Defendant. If Defendant is found liable, after a brief

21   intermission, the same jury will determine damages Plaintiff is entitled to. Because the same jury

22   will decide liability and damages, the only prejudice Plaintiff will suffer is a slight delay in the

23   ultimate resolution of their claims. However, the Court does not find this prejudice to be undue.

24   **IV.    MOTIONS IN LIMINE**

25       **A.    Legal Standard**

26           **1.    Motions *in limine***

27       Motions *in limine* are a "procedural mechanism to limit in advance testimony or evidence

28   in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other

United States District Court
Northern District of California

7

1   pretrial motions, motions *in limine* are "useful tools to resolve issues which would otherwise

2   clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

3   Accordingly, "a ruling on a motion in limine is essentially a preliminary opinion that falls entirely

4   within the discretion of the district court." *Id.*; *see Luce v. United States*, 469 U.S. 38, 41 n. 4

5   (1984) (explaining that a court may rule in limine "pursuant to the district court's inherent

6   authority to manage the course of trials"). However, "[a] motion in limine is not the proper

7   vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such

8   motions has passed." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013),

9   *aff'd*, 574 U.S. 418 (2015).

10      In many instances, rulings "should be deferred until trial, so that questions of foundation,

11  relevancy, and potential prejudice may be resolved in proper context." *United States v. Pac. Gas*

12  *& Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016). For example, to exclude evidence on a

13  motion *in limine*, "the evidence must be inadmissible on all potential grounds." *McConnell v.*

14  *Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014). Thus, denial of a motion *in*

15  *limine* to exclude certain evidence does not mean that all evidence contemplated by the motion

16  will be admitted, only that the court is unable to make a comprehensive ruling in advance of trial.

17  *Id.* Moreover, even if a district court does rule in limine, the court may "change its ruling at trial

18  because testimony may bring facts to the district court's attention that it did not anticipate at the

19  time of its initial ruling." *City of Pomona*, 866 F.3d at 1070; *see also Ohler v. United States*, 529

20  U.S. 753, 758 n.3 (2000) ("[I]n limine rulings are not binding on the trial judge, and the judge may

21  always change his mind during the course of a trial.").

22          **2.  Federal Rules of Evidence 401, 402, and 403**

23      Federal Rule of Evidence 402 provides that "[r]elevant evidence is admissible" unless the

24  U.S. Constitution, a federal statute, the Federal Rules of Evidence, or "other rules prescribed by

25  the Supreme Court" provide otherwise. Fed. R. Evid. 402. Evidence is "relevant" if: (1) "it has

26  any tendency to make a fact more or less probable than it would be without the evidence"; and (2)

27  "the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is

28  not admissible." Fed. R. Evid. 402. Federal Rule of Evidence 403 permits a court to exclude

relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

**B.    Discussion**

    **1.    Defendant's Motion No. 1: The 2019 Senior Director, LATAM Marketing Promotion Decision (ECF 107)**

On summary judgment, the Court dismissed Plaintiff's claim alleging that she should have been promoted in 2019 to the role of Senior Director, LATAM Marketing ("2019 promotion"), finding the claim to be time-barred.  ECF 94, at 25.  Pursuant to Federal Rules of Evidence 402 and 403, Defendant moves to exclude evidence or testimony related to the 2019 promotion decision because such evidence is irrelevant to the remaining claims, would unduly prejudice LS&Co., risks confusing and misleading the jury, and unnecessarily wastes time.  ECF 107, at 5.

Defendant argues that because the Court dismissed claims related to the 2019 promotion, any evidence or argument relating to the decision does not have the "tendency to make the existence of any fact [related to the 2021 or 2022 promotion decisions] more probable or less probable."  ECF 107, at 4 (citing Fed. R. Evid. 401).

Defendant further argues that permitting evidence related to the 2019 promotion will confuse and mislead the jury.  *Id.*; *see* Fed. R. Evid. 403.  Defendant also contends that it would unduly prejudice it because Plaintiff would be able to suggest that she was not promoted in 2019 for unlawful reasons without having to prove the requisite elements of a Title VII or FEHA claim.  *Id.* at 5.

Plaintiff opposes the motion.  ECF 126.  The Supreme Court has held that for Title VII claims, employees may use "prior acts as background evidence in support of a timely claim."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Lyons v. England*, 307 F.3d 1092, 1111 (9th Cir. 2002) (same); *Dominguez–Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1031–32, 1038 (9th Cir. 2005) (finding discriminatory statements relevant to proving discriminatory promotion decision five years later).  Consistent with these holdings, this Court

United States District Court
Northern District of California

1  held that "Plaintiff may use the evidence surrounding the time-barred claims in support of the

2  surviving claim as background evidence."  ECF 94 at 7.

3      Plaintiff contends that the 2019 promotion remains relevant as background evidence as to

4  discriminatory motive.  ECF 126, at 5.  Plaintiff further argues that the 2019 promotion is relevant

5  to damages for constructive discharge and emotional distress.  *Id.*  Plaintiff asserts that the 2019

6  promotion shows that Plaintiff had been chasing the Senior Director position since at least 2019.

7  *Id.*

8      Plaintiff also contends that any risk that the jury would be confused or misled by the 2019

9  promotion may be addressed through limiting jury instruction.  ECF 126, at 5; *Douglass v. Nat'l*

10  *Fed'n of Indep. Bus.*, 67 F.3d 306 (9th Cir. 1995) (holding that the court erred in excluding prior

11  instances of discrimination).  Plaintiff asserts that she will be unduly prejudiced if the 2019

12  promotion is excluded because she will not be able to rebut any evidence Defendant introduces

13  that shows Doren helping Plaintiff in her career.  *Id.* at 6.

14      The Court finds Plaintiff's arguments to be persuasive.  The Court finds that evidence of

15  the 2019 promotion is relevant as background evidence for the 2021 and 2022 promotions.

16  Accordingly, the Court **DENIES** Defendant's Motion No. 1.  The Court will issue limiting

17  instruction for the liability stage and the damages stage to counter any prejudice.

18      **2.  Defendant's Motion No. 2: Emotional Distress Beyond Therapist Notes and**

19          **Deposition Testimony (ECF 108)**

20      During discovery, Defendants requested that Plaintiff produce documents supporting her

21  "allegations of emotional and/or physical suffering and harm, including . . . medical and/or

22  psychological and/or counseling reports."  ECF 108, at 2.  In response Plaintiff produced eleven

23  (11) pages of doctor's notes from seven therapy sessions.  *Id.*  Plaintiff has not supplemented her

24  production or identified or designated an expert to offer testimony to support a claim of severe

25  emotional distress.  *Id.*  On March 1, 2025, Plaintiff *for the first time* notified Defendant that she

26  seeks to introduce lay testimony from Plaintiff's psychologist, Dr. William Quick, M.D. in support

27  of Plaintiff's claims for emotional distress.  ECF 127, at 4–5 (emphasis added); *see* Fed. R. Evid.

28

United States District Court
Northern District of California

701(c) (Lay witness testimony may "not [be] based on scientific, technical, or other specialized knowledge.").

A party who fails to make a disclosure required under Rule 26(a) or (e) without "substantial justification" cannot rely on withheld evidence on a motion or at trial.  Fed. R. Civ. P. 37(c)(1).   The party facing Rule 37 sanctions has the burden of proving its failure to comply with Rule 26 was "substantially justified" or "harmless."  *Yetti By Molly, LTD v. Deckers Outdoor Corp.*, 259 F. 3d 1101, 1106 (9th Cir. 2001).  Unless the nondisclosure is "harmless" or excused by "substantial justification," preclusion of the undisclosed evidence is mandatory.  *Id.*  "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."  *Id.*  "A district court has wide discretion in controlling discovery" and that discretion is "particularly wide" in deciding whether to exclude witnesses.  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014).

Defendant moves to exclude the introduction of any testimony from a lay witness (including herself and Dr. Quick) regarding the causes of any particular symptoms or distress, including but not limited to depression, anxiety, trauma, and/or other similar severe or ongoing mental conditions, and to exclude all argument and evidence relating or referring to any emotional distress beyond what was included in Plaintiff's produced therapist notes and what she testified to in deposition.  ECF 108, at 2.  Plaintiff opposes exclusion.  ECF 127.  The Court will address the exclusion of (1) Plaintiff's lay testimony, (2) Dr. Quick's lay testimony, and (3) all argument and evidence of emotional distress beyond the production in discovery and deposition testimony.

### a.  Plaintiff may offer lay witness testimony about her emotional distress that is rationally based on her perception.

Under Federal Rule of Evidence 701, a lay witness's testimony "is limited to one that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  Defendant argues that lay testimony regarding diagnosis, prognosis or clinical severity of one's state of emotional health,

United States District Court
Northern District of California

1    derived solely from lay witnesses' own, untrained opinions or personal beliefs, is inadmissible.

2    ECF 108, at 3.

3        Plaintiff counters that a lay witness may offer testimony that is "rationally based on [her]

4    perception" including her feelings, mental state, and pain, and how her feelings and mental state

5    changed when she was denied promotion after promotion.  ECF 127, at 3 (citing Fed. R. Evid.

6    701).  The Ninth Circuit has held that while an expert medical opinion is required to establish that

7    discrimination cause mental distress for purposes of economic damages, a plaintiff may testify

8    about her mental distress for purposes of noneconomic damages.  *Jan. v. Dr Pepper Snapple Grp.,*

9    *Inc.*, 594 F. App'x 907, 911 (9th Cir. 2014).

10        Plaintiff also contends that Plaintiff should be able to testify regarding her diagnosis and

11   treatment for depression and anxiety.  Plaintiff cites to *Asberry v. Relevante*, No.

12   116CV01741JLTHBKPC, 2023 WL 2563243, at *5 (E.D. Cal. Mar. 17, 2023).  In *Asberry*, the

13   court held that plaintiff could testify as to *his understanding* of any medical diagnosis he received

14   from a medical professional.  *Asberry*, 2023 WL 2563243, at *5 (emphasis in original).  Here,

15   Plaintiff threads a fine line between what the Rule 701 permits and what it does not.

16        The Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant's motion as to

17   Plaintiff's lay witness testimony regarding her emotional distress.  Plaintiff may testify about her

18   emotional distress, limited to what is rationally based on her perception.  She may not testify

19   regarding her diagnosis, prognosis, clinical severity or causation of the emotional distress.

20            **b.  The Court limits the lay testimony of Dr. Quick in support of Plaintiff's**

21                **emotional distress.**

22        The parties dispute whether Dr. Quick may be introduced as a lay witness to testify to

23   Plaintiff's emotional distress.  The scope of Defendant's motion extends to the exclusion of lay

24   testimony of Dr. Quick in support of Plaintiff's claims for emotional distress.  ECF 108, at 2

25   ("exclude introduction of any testimony from a lay witness"); *see* ECF 137, at 7 (Plaintiff

26   mischaracterizing Defendant's motion to assert that it does not seek to limit Dr. Quick's

27   testimony).

28

1    Plaintiff seeks to introduce Dr. Quick, Plaintiff's psychologist, as a lay witness.  ECF 127,

2    at 5.  Plaintiff concedes that she has not designated Dr. Quick as an expert witness but intends to

3    call on Dr. Quick as a lay witness to testify as to his perceptions of Plaintiff's mental distress.  *Id.*

4    Plaintiff contends that Defendant will be able to cross-examine Dr. Quick and his qualifications on

5    the stand.  *Id.*  In oral argument, Plaintiff also admits that she would seek testimony from Dr.

6    Quick as to the causes of her emotional distress.  ECF 137, at 13.

7    Defendant argues that Plaintiff should not be permitted to introduce Dr. Quick because she

8    introduced him as a lay witness for the first time on March 1, 2025—one day after the pretrial

9    conference was due.  ECF 108, at 5; ECF 127, at 5 (Plaintiff conceding that she did not disclose

10    Dr. Quick as a witness until March 1, 2025).

11    Plaintiff argues that *Yetti* is distinguishable because that there is no need for another

12    deposition of Plaintiff or Dr. Quick.  ECF 127, at 6.  Rather, the challenged evidence directly

13    relates to a fully covered deposition topic.  *Id.*

14    In oral argument, Plaintiff argues that despite the late disclosure of Dr. Quick as a lay

15    witness, Defendant was on notice during the discovery period of Dr. Quick's potential pertinence

16    to the case such that formal disclosure was not necessary.  ECF 137, at 10.  Specifically, in

17    Plaintiff's deposition, Defendant's counsel themselves stated that Defendant would "have Dr.

18    Quick testify at trial."  ECF 127-1, Bois Tr. 278:7.

19    Plaintiff argues that "a formal disclosure is unnecessary when the information has

20    'otherwise been made known to the other parties during the discovery process.'"  *V5 Techs. v.*

21    *Switch, Ltd.*, 334 F.R.D. 615, 618 (D. Nev. 2020).  In *V5 Technologies*, the court found that

22    plaintiff had not violated its disclosure requirements for a witness because defendant was on notice

23    during the discovery period of the witness's potential pertinence to the case.  *Id.* at 618–19.

24    Specifically, plaintiff had produced documents identifying the witness, witness was discussed in at

25    least eight depositions, and defense counsel himself posed deposition questions about the witness

26    in depositions.  *Id.* at 619.  The court held that because the witness's "identity and the subjects on

27    which he could provide testimony pertinent to this case were known to [d]efendant during the

28

United States District Court
Northern District of California

1    discovery process through document production and deposition discussion," plaintiff did not have

2    duty to supplement its initial disclosures.  *Id.*

3         Here, like in *V5 Technologies*, Dr. Quick was discussed in Plaintiff's deposition and his

4    notes were also produced in discovery in support of Plaintiff's emotional distress claims.  Plaintiff

5    argues that she did not have a duty to supplement initial disclosures because Defendant on notice

6    of Dr. Quick's importance.  ECF 137, at 11.

7         In opposition, Defendant cites to *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d

8    843, 863 (9th Cir. 2014).  In *Ollier*, the Ninth Circuit held that the fact "[t]hat another witness

9    ha[d] made a passing reference in a deposition to a person with knowledge or responsibilities who

10    could conceivably be a witness [did] not satisfy a party's disclosure obligations."  *Ollier*, 786 F.3d

11    at 863.  "An adverse party should not have to guess which undisclosed witnesses may be called to

12    testify."  *Id.*  In holding so, the Ninth Circuit found that the district court had not erred in barring a

13    witness that was undisclosed and simply mentioned in a deposition.  *Id.*  Defendant argues that

14    like in *Ollier*, the fact that Dr. Quick was mentioned in Plaintiff's deposition and a few pages of

15    his notes were produced in discovery does not absolve Plaintiff of her duty to timely disclose.

16         Here, Plaintiff's failure to disclosure Dr. Quick falls somewhere in between the scenarios

17    in *Ollier* and *V5 Technologies*, as Dr. Quick was only discussed in one deposition but was

18    separately disclosed through production and acknowledged by defense counsel themselves as a

19    potential witness.  The Court finds that the instant case is more similar to *V5 Technologies*.  In the

20    narrow context of this action, the Court finds that Plaintiff did not violate a duty to supplement its

21    initial disclosures.

22         However, the Court remains concerned by Plaintiff's confession that she seeks to introduce

23    Dr. Quick as a lay witness to testify as to the causes of Plaintiff's emotional distress including the

24    effect Defendant's actions had on Plaintiff psychologically.  ECF 120, at 15 ("Dr. Quick is

25    expected to testify regarding what effect Ms. Bois' treatment at LS&Co. (including the ongoing

26    failure to promote) had on her, including *psychologically*.") (emphasis added); ECF 137, at 13

27    ("Dr. Quick's testimony is needed to rebut" Defendant's causation of emotional distress

28    argument.).  Plaintiff's stated purpose is in direct violation of Federal Rule of Evidence 701 and

United States District Court
Northern District of California

14

1    Ninth Circuit precedent.  *See* Fed. R. Evid 701; *Jan.*, 594 F. App'x at 911 ("expert medical

2    opinion [is] required to establish that discrimination caused clinical depression for purposes of

3    economic damages").

4         The introduction of Dr. Quick as lay witness is a clear attempt at disguising expert

5    testimony as lay testimony.  Plaintiff cites to a hostile work environment action in which the court

6    admitted therapists as lay witnesses.  *Garcia v. Mayorkas*, No. 21 C 405, 2024 WL 1121935, at *7

7    (N.D. Ill. Mar. 8, 2024).  However, *Garcia* is distinguishable because the purpose of introducing

8    the therapists was "only regarding personal observations, examinations, and diagnoses completed

9    during the course of treatment and contained within the relevant medical records." *Id.*  Further,

10    prior to the introduction of therapists as lay witnesses, Plaintiff had introduced an expert witness

11    to testify to Plaintiff's mental condition. *Id.*  Here, Plaintiff had not designated an expert witness

12    or introduced medical records and has all but conceded that she intends to elicit testimony beyond

13    the boundaries of Federal Rule of Evidence 701.

14         Considering Plaintiff's stated improper purpose, the Court **GRANTS-IN-PART** and

15    **DENIES-IN-PART** Defendant's motion to exclude Dr. Quick's lay testimony as to Plaintiff's

16    emotional distress.  *See* Fed. R. Evid. 701.  Dr. Quick may testify to his personal observations of

17    Plaintiff's emotional distress, but he may not testify to her diagnosis, prognosis, clinical severity,

18    or causation of her emotional distress.  *See* Fed. R. Evid 701; *Jan.*, 594 F. App'x at 911.  Given

19    the scope of the motion, Dr. Quick may also testify to constructive discharge.  *See* ECF 120, at 15

20    ("Dr. Quick is also expected to testify about Ms. Bois' constructive termination.").  Dr. Quick's

21    testimony is only relevant to damages; thus, he may only be introduced during the damages phase

22    of the trial.  The Court will issue limiting instruction to ensure Dr. Quick's testimony is limited to

23    his personal observations of Plaintiff's emotional distress and constructive discharge.

24         ### c.  The Court excludes evidence or argument regarding emotional distress

25         ### that was not previously produced in discovery.

26         Parties dispute whether Plaintiff may introduce evidence of emotional distress beyond

27    what was included in Plaintiff's produced therapist notes and what she testified to in deposition.

28    Plaintiff argues that she will be prejudiced by the exclusion.  ECF 127,  at 6.  Defendant contends

that permitting any new evidence that was not previously disclosed would constitute unfair surprise and would unduly prejudice Defendant.  ECF 108, at 5.

The Court finds Plaintiff's arguments to be conclusory and unsupported by any authority. Plaintiff fails to proffer any justification that meets the "substantially justified" or "harmless" exceptions set forth in Rule 37(c)(1).  Plaintiff further complains that she did not get to file a reply for the instant motion *in limine*, hoping that the Court will forget that Plaintiff was never entitled to a reply to Defendant's motion.  ECF 137, at 8.

Plaintiff does not meet disclosure requirements for evidence beyond the production of doctor's notes from seven therapy sessions and Plaintiff's deposition testimony.  The Court **GRANTS** Defendant's motion to exclude evidence or argument regarding emotional distress that was not produced previously in discovery.

### 3. Defendant's Motion No. 3: Attempts by Plaintiff to Find New Employment (ECF 109)

In discovery, Defendant specifically requested documents "relating or referring to any and all attempts by PLAINTIFF to obtain employment . . . subsequent to [her] employment with DEFENDANT, including but not limited to, any and all DOCUMENTS relating to resumes and/or other records off employment history; job applications and related documentation; negotiations regarding any aspect of employment; offers of employment; correspondence, notes, memoranda and documents to and/or from any prospective employer from which employment was sought regarding interviews, applications, offers of employment, [and] rejections of applications for employment . . ."  ECF 109, at 2–3.

In response, Plaintiff produced one April 2023 email chain.  *Id.*  Further, at her deposition, Plaintiff testified that her friend was "going to give [Plaintiff] [a job] offer, but she wanted to make sure that [Plaintiff] was ready to go back to work."  *Id.* (citing Bois Tr. 252:13–15).  Instead of taking the offer, Plaintiff decided that she "was going to at least take the summer [of 2023] off [and] spend it with [her] boys."  *Id.* (citing Bois Tr. at 253:2–3).  Plaintiff further testified that she had not interviewed for any jobs and had not tried to find any new employment.  *Id.* (citing Bois Tr. at 254:2–5).

United States District Court
Northern District of California

1    On February 28, 2025, the day the joint pretrial statement was due, Plaintiff disclosed to

2    Defendant a ten-page supplemental production of documents related to her recent mitigation

3    efforts.  ECF 109-1, Declaration of Cameron W. Fox ("Fox Decl."), ¶ 4; ECF 128, at 3–4.  The

4    production consists of a January 2025 text message conversation inquiring about a contact's

5    connection to a hiring manager for a job Plaintiff saw on LinkedIn; LinkedIn messages with four

6    recruiters dated August 2024 through January 2025; and an email with TopResume regarding

7    updates to her resume dated September 2024.  ECF 128, at 4.

8    Defendant moves to exclude the introduction of any evidence, argument, or testimony

9    regarding Plaintiff's efforts to mitigate her damages that was not already disclosed during

10    discovery including the February 28, 2025 production.  ECF 109, at 2.  Plaintiff in opposition

11    notes her surprise that Defendant considers her production on the due date of the joint pretrial

12    statement as a delay.  ECF 128, at 4.

13    "Under California law, a plaintiff has a duty to mitigate damages and cannot recover losses

14    it could have avoided through reasonable efforts."  *Bank of Stockton v. Verizon Commc'ns, Inc.*,

15    375 F. App'x 746, 747 (9th Cir. 2010) (citing *Thrifty–Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559,

16    54 (Cal. Ct. App. 1996) (internal quotation omitted).  Specifically, Title VII "requires the claimant

17    to use reasonable diligence in finding other suitable employment."  *Siam v. Potter*, No. C 04-0129

18    MHP, 2005 WL 8166268, at *17 (N.D. Cal. May 17, 2005) (quoting *Odima v. Westin Tuscan

19    Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995).  Employers carry the burden of proving that a plaintiff

20    failed to mitigate his damages.  *Id.* (citing *Sanger v. United Air Lines, Inc.*, 633 F.2d 864, 868 (9th

21    Cir. 1980)).

22    A party who fails to make a disclosure required under Rule 26(e) without "substantial

23    justification" cannot rely on withheld evidence on a motion or at trial.  Fed. R. Civ. P. 37(c)(1).

24    The party facing sanctions has the burden of proving its failure to comply with Rule 26 was

25    "substantially justified" or "harmless."  *Yetti*, 259 F. 3d at 1106.  Unless the nondisclosure is

26    "harmless" or excused by "substantial justification," preclusion of the undisclosed evidence is

27    mandatory.  *Id.*  "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of

28    any information required to be disclosed by Rule 26(a) that is not properly disclosed."  *Id.*

United States District Court
Northern District of California

1        Here, Defendant argues that Plaintiff should not be permitted to offer evidence or argument

2    related to her efforts to mitigate damages beyond what she produced in discovery.  ECF 109, at 4.

3    Defendant contends that Plaintiff had ample time to supplement her production but waited until

4    the due date of the pretrial statement.  *Id.*  Plaintiff's untimely disclosure is neither substantially

5    justified nor harmless.  *Id.* (citing *Yetti*, 259 F. 3d at 1107).  Defendant further contends that

6    untimely disclosure of mitigation evidence would unduly prejudice it.  *Id.* (citing Fed. R. Evid.

7    403).  Thus, Defendant argues that sanction is proper under Rule 37(c)(1) for plaintiffs' failure to

8    disclose damages calculations as required by Rule 26(a)(1)(A)(iii).  *Id.* at 5.

9        Plaintiff concede that she does not intend to produce further documentary evidence at trial

10   related to mitigation efforts.  ECF 128, at 2.  However, Plaintiff intends to testify to her recent

11   efforts during trial beyond the four corners of her document production and she opposes exclusion

12   of her February 28, 2025 production.  *Id.*

13       Plaintiff argues that Rule 26 is not applicable because her February 28, 2025 production

14   concerns her recent efforts to mitigate that had not occurred during fact discovery.  *Id.* at 4.

15   However, Rule 26(e) imposes a duty to *timely* supplement disclosures made under Rule 26(a) that

16   become incomplete or incorrect.  *Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-CV-00410-

17   EMC, 2022 WL 21306657, at *5 (N.D. Cal. Oct. 4, 2022) (emphasis added); Fed. R. Civ. P. 26(e).

18   Rule 37(c)(1) extends to Rule 26(e).  *See* Rule 37(c)(1); *Yetti*, 259 F. 3d at 1106 n.1.  Thus,

19   Plaintiff's contention that Rule 26 does not apply is unpersuasive.

20       The Court finds that Plaintiff's February 28, 2025 supplement to her mitigation damages is

21   untimely.  Plaintiff's contention that she made mitigation attempts from August 2024 to January

22   2025 and timely disclosed by March 2025 are unpersuasive because Plaintiff waited until the day

23   the pretrial statement was due to disclose to Defendants.  Plaintiff provides no justification for

24   waiting months to supplement her disclosures with trial rapidly approaching.

25       Rule 26(a)(1)(A)(iii) requires Plaintiff to disclose damage calculations and Rule 26(e)(1)

26   requires Plaintiff to timely supplement her disclosure.  Fed. R. Civ. P. 26 (a)(1)(A)(iii), (e)(1);

27   *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (affirming district

28   court's preclusion of undisclosed damages evidence).  Plaintiff violated her duty to timely

United States District Court
Northern District of California

1  supplement her disclosure.  Plaintiff has the burden to establish that her delay was "substantially

2  justified" or "harmless."  *Yetti*, 259 F. 3d at 1106.  Plaintiff provides no justification for her delay

3  nor establishes that the evidence would be harmless.

4      Plaintiff also argues that Defendant cannot limit Plaintiff's testimony as to her mitigation

5  of damages because there was no failure to disclose such efforts under Rule 26.  ECF 128, at 5.  If

6  Defendant were to cross-examine Plaintiff on her efforts to secure new employment, and if she is

7  not permitted to testify to her employment efforts in September 2024 and January 2025, then the

8  jury will be misled.  ECF 137, at 20.  On this point, the Court agrees that the sanction would be

9  too harsh.  *See* Fed. R. Civ. P. 37(c)(1)(a) (providing the Court will discretion to set "appropriate"

10  sanctions).  The Court finds that if Defendant cross-examines Plaintiff on her efforts to mitigate,

11  then Plaintiff may testify to her recent efforts including from August 2024 to January 2025.

12      The Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant's motion.  Plaintiff

13  may not introduce any evidence, argument, testimony regarding Plaintiff's efforts to mitigate her

14  damages that was not already disclosed during discovery including Plaintiff's untimely

15  supplemental production of documents on February 28, 2025.  However, if cross-examined,

16  Plaintiff may offer testimony regarding her mitigation of damages including her recent efforts

17  after the close of fact discovery.

18      ### 4.  **Plaintiff's Motion No. 1: Health Conditions Predating Employment (ECF**

19      **111)**

20      Plaintiff moves to exclude the reference of introduction of any evidence at trial of

21  Plaintiff's past medical conditions or diagnoses that predated her employment with Defendant.

22  ECF 111, at 3.  Plaintiff asserts that this evidence is irrelevant and more prejudicial than probative.

23  *Id.* at 4, 6.  Defendant opposes the motion, arguing that the Plaintiff's long-running issues with

24  anxiety and depression are relevant as to causation of Plaintiff's alleged emotional distress.  ECF

25  123, at 3.

26      In her complaint, Plaintiff alleges that "[s]he developed worsening symptoms of

27  depression and anxiety as well as low self-esteem and feelings of inadequacy, which—

28  eventually—resulted in an eating disorder severe enough that it caused her family alarm" and "[a]s

1   a result of the discrimination, [she] has suffered mental distress in the form of depression, anxiety,

2   fear, and lack of sleep." ECF 1, ¶¶ 7, 59. However, in deposition, Plaintiff testified that she

3   received treatment for anxiety and an eating disorder as a teenager and in college. ECF 111, at 3;

4   ECF 123, at 3.

5         First, Plaintiff argues that her past mental health treatment should be excluded as irrelevant

6   because it does not "ha[ve] any tendency to make a fact more or less probable" and is not "of

7   consequence in determining" whether Defendant engaged in unlawful discrimination over twenty

8   years later. ECF 111, at 4 (citing Fed. R. Evid. 401). Plaintiff contends that her mental health

9   history is relevant to credibility only if it occurs during the events at issue and that it has no

10  bearing on her ability to perceive and recall recent events. *Id.* at 4–5.

11        Plaintiff urges the Court to consider *Montez v. Stericycle, Inc.*, No. 1:12-CV-0502-AWI-

12  BAM, 2013 WL 2150025 (E.D. Cal. May 16, 2013). In *Montez*, plaintiff asserted several causes

13  of action for disability discrimination and retaliation, seeking compensation for lost past and

14  future earnings, as well as for the emotional anguish he suffered as a result of his unlawful

15  termination. *Montez*, 2013 WL 2150025, at *1. Defendant filed a motion to compel plaintiff to

16  appear for an independent mental examination related to plaintiff's alleged emotional injuries. *Id.*

17  at *2. The court denied the motion, holding that "[p]laintiff ha[d] not placed his mental injury in

18  controversy as [p]laintiff's mental anguish claims are those garden-variety emotional distress

19  claims naturally flowing from an unlawful termination." *Id.* at *4. Plaintiff argues, like *Montez*,

20  she is asserting garden-variety claim for emotional distress one would expect after years of

21  workplace mistreatment. ECF 111, at 6.

22        Defendant argues that Plaintiff's relevance argument misses the mark. ECF 123, at 4–5.

23  Defendant does not seek to use Plaintiff's mental health history to challenge her credibility or

24  competency. *Id.* at 5. Rather, Defendant seeks to use her mental health history to put forth

25  alternative causes to her alleged emotional distress. *Id.* Defendant contends that *Montez* is

26  inapposite because causation of emotional distress was not at issue. *Id.* In contrast, here, the

27  causation of Plaintiff's alleged emotional distress is at issue. *Id.* Defendant cites to two cases

28  from this District. *Id.*

United States District Court
Northern District of California

In *Enwere v. Terman Associates, L.P.*, the court dealt with a motion to compel independent mental examination where plaintiff asserted that she suffered mental and emotional distress as a result of defendant's racial discrimination in housing. *Enwere v. Terman Assocs., L.P.*, No. C 07-1239 JF PVT, 2008 WL 5146617, at *1–2 (N.D. Cal. Dec. 4, 2008). The Court granted the motion, finding that defendants "are entitled to discover what other causes exist for Plaintiff's emotional distress, regardless of whether any such other causes occurred before the events at issue in the lawsuit or afterwards." *Id.* at *4.

In *Baptiste v. Lids*, the court dealt with a discovery dispute, in which defendant sought to compel production of medical records to rebut plaintiff's allegations that any mental distress was caused by defendant's conduct. *Baptiste v. Lids*, No. C 12-05209 PJH (MEJ), 2013 WL 5708201, at *1 (N.D. Cal. Oct. 18, 2013). Plaintiff alleged that he has and continues to suffer severe emotional distress stemming from defendants' alleged conduct and sought to recover damages for emotional distress. *Id.* at *2. In light of these allegations, the court granted the motion, finding that because plaintiff put his mental and emotional condition directly in issue, plaintiff had waived his psychotherapist-patient privilege. *Id.* at *2–3. Defendants were entitled to rebut Plaintiff's claims by presenting evidence that any alleged emotional distress arose from preexisting conditions and alternative causes. *Id.* at *2.

Like in *Enwere* and *Baptiste*, Defendant argues that Plaintiff has put her mental health at issue and Defendant is entitled to introduce evidence of alternative bases for alleged emotional injuries including preexisting conditions. Defendant's arguments are persuasive. The Court finds that Plaintiff's past mental health treatment is relevant to whether Defendant's conduct caused Plaintiff's emotional distress. *See* Fed. R. Evid. 401.

Both *Enwere* and *Baptiste* dealt with emotional distress that was beyond the garden variety. *Enwere*, 2008 WL 5146617, at *4; *Baptiste*, 2013 WL 5708201, at *2. Plaintiff argues that these cases are inapplicable because she only alleges garden-variety emotional distress. ECF 137, at 23. Garden variety emotional distress has been described as "ordinary or commonplace emotional distress, that which is simple or usual." *Fitzgerald v. Cassil*, 216 F.R.D. 632, 637 (N.D. Cal. 2003) (internal quotation marks and citation omitted). "In contrast, emotional distress that is

1    not garden variety 'may be complex, such as that resulting in a specific psychiatric disorder.'" *Id.*

2    (citation omitted).

3          Here, Plaintiff alleges that Defendant's conduct caused her depression, anxiety, and an

4    eating disorder. ECF 1, ¶¶ 7, 59. In this case, the Court does not find such allegations to be

5    "garden variety." *See Pringle v. Wheeler et al*, No. 19-CV-07432-WHO, 2021 WL 1907824, at *3

6    (N.D. Cal. Apr. 16, 2021) (citing examples of allegations that go beyond garden variety). Thus,

7    the Court finds Plaintiff's arguments to be unpersuasive.

8          Next, Plaintiff argues that her previous treatment for anxiety, depression, and an eating

9    disorder is more prejudicial than probative. ECF 111, at 6 (citing Fed. R. Evid. 403). Plaintiff

10   urges the Court to consider *Schagene v. Mabus*, 704 F. App'x 671 (9th Cir. 2017). In *Schagene*,

11   plaintiff brought a hostile work environment claim against her former employer and sought to

12   preclude evidence about her prior mental health history at trial. *Schagene*, 704 F. App'x at 672.

13   The events in question occurred between 2004 and early 2011. *Id.* at 673. The district court

14   denied plaintiff's motion *in limine* to preclude "any evidence" about her mental health state in

15   1997 to 1998. *Id.* The Ninth Circuit reversed, finding that plaintiff's mental state in 1997 to 1998

16   could not show that it was any more or less probable that plaintiff could accurately perceive and

17   tell the truth during the timeframe of the events alleged. *Id.* Thus, the high risk of prejudice

18   substantially outweighed the limited probative value. *Id.* Like in *Schagene*, Plaintiff contends that

19   the high risk of prejudice substantially outweighs the probative value. ECF 111, at 7.

20         Plaintiff also relies on two articles from the *International Journal of Eating Disorders* to

21   argue that the stigmatization of eating disorders and people with them provides a negative barrier

22   to recovery and prevents those with eating disorders from seeking help. *Id.*; ECF 111-1, Exs. B

23   and C. Defendant objects to these articles as inadmissible hearsay. ECF 124, at 2. Defendant

24   argues that these are articles additionally do not qualify for the learned treatise exception to the

25   hearsay rule. *Id.* Federal Rule of Evidence 803(18) provide an exception to the hearsay rule for

26   "[a] statement contained in a treatise, periodical, or pamphlet if: (A) the statement is called to the

27   attention of an expert witness on cross-examination or relied on by the expert on direct

28   examination; and (B) the publication is established as a reliable authority by the expert's

United States District Court
Northern District of California

22

1    admission or testimony, by another expert's testimony, or by judicial notice." Fed. R. Evid.

2    803(18).  The Court agrees with Defendant that the two articles are inadmissible hearsay that do

3    not qualify for the learned treatise exception.

4         Plaintiff argues that the Court may take judicial notice of the exhibits because "[i]t is well-

5    known and well-documented that women diagnosed with an eating disorder are frequently

6    regarded as personally responsible and blameworthy for their condition."  ECF 137, at 25.

7    Plaintiff's argument is circular as she cites to the very documents that she seeks judicial notice of

8    to support her argument.  *Id.*  Accordingly, the Court declines Plaintiff's request, sustains

9    Defendant's objection, and **STRIKES** the two articles.

10        Defendant also argues that *Schagene* is distinguishable because unlike defendants in

11   *Schagene*, Defendants do not challenge Plaintiff's credibility, but rather, challenge causation of

12   her alleged emotional distress.  ECF 124, at 6.  Defendant further argues that any risk of prejudice

13   may be minimized with a limiting instruction.  *Id.* at 6 n.2 (citing *Louden v. City of Whittier*, No.

14   CV 03-7816-GAF, 2005 WL 6000502, at *3 (C.D. Cal. Oct. 27, 2005)).

15        The Court agrees with Defendant.  Plaintiff's complaint specifically states that Defendant's

16   conduct caused Plaintiff to suffer depression, anxiety, and an eating disorder.  *See* ECF 1, ¶¶ 7, 48.

17   The Court **DENIES** Plaintiff's motion to exclude the reference of introduction of any evidence at

18   trial of Plaintiff's past medical conditions or diagnoses that predated her employment with

19   Defendant.  Such evidence is relevant to whether Defendant's alleged conduct caused Plaintiff

20   emotional distress.  However, to prevent prejudice, the Court limits the introduction Plaintiff's

21   past medical conditions or diagnoses that predated her employment with Defendant to the

22   damages portion of trial and only for the purpose of rebutting Plaintiff's assertions of emotional

23   distress that go beyond garden variety emotional distress, i.e., depression, anxiety, and eating

24   disorder.  The Court will issue limiting instruction to counter any prejudice.

25   **V.    CONCLUSION**

26        After consideration of the parties' oral argument and for the reasons stated above, the

27   Court rules as follows:

28

United States District Court
Northern District of California

23

1. The Court **ORDERS** bifurcation of the trial into two phases.  In the first phase, the jury will determine liability of Defendant.  If Defendant is found liable, after a brief intermission, the same jury will determine damages Plaintiff is entitled to.

2. Defendant's Motion No. 1 is **DENIED**.  The Court will issue limiting jury instructions.  Fed. R. Evid.  403; *see* 9th Cir. Model Instruction 1.11.

3. Defendant's Motion No. 2 is **GRANTED-IN-PART** and **DENIED-IN-PART**.

   a. Plaintiff's testimony as to her emotional distress is limited to what is rationally based on her perception.  *See* Fed. R. Evid. 701.  She may not testify regarding her diagnosis, prognosis, clinical severity, or causation of the emotional distress.  *Id.*

   b. Dr. Quick may not be introduced for any purpose that falls outside of the scope of Federal Rule of Evidence 701.  Dr. Quick may testify to his personal observations of Plaintiff's emotional distress, but he may not testify to her diagnosis, prognosis, clinical severity, or causation of her emotional distress.  *See* Fed. R. Evid 701; *Jan.*, 594 F. App'x at 911.  He may also testify to constructive discharge.  *See* ECF 120, at 15 ("Dr. Quick is also expected to testify about Ms. Bois' constructive termination.").  Dr. Quick may only be introduced during the damages phase of the trial.

   c. Plaintiff may not introduce evidence or argument regarding emotional distress that was not produced previously in discovery.  *See* Fed. R. Civ. P. 37(c)(1).

4. Defendant's Motion No. 3 is **GRANTED-IN-PART** and **DENIED-IN-PART**.

   a. Plaintiff may not introduce any evidence, argument, testimony regarding Plaintiff's efforts to mitigate her damages that was not already disclosed during discovery including Plaintiff's untimely supplemental production of documents on February 28, 2025.  *See* Fed. R. Civ. P. 26 (a)(1)(A)(iii), (e)(1); Fed. R. Civ. P. 37(c)(1); *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008).

24

United States District Court
Northern District of California

b. However, if cross-examined, Plaintiff may offer testimony regarding her mitigation of damages including her recent efforts after the close of fact discovery. *See* Fed. R. Civ. P. 37(c)(1)(a) (providing the Court will discretion to set "appropriate" sanctions).

5. Plaintiff's Motion No. 1 is **DENIED**.

a. To prevent prejudice, the Court limits the introduction Plaintiff's past medical conditions or diagnoses that predated her employment with Defendant to the damages portion of trial and only for the purpose of rebutting Plaintiff's assertions of emotional distress that go beyond garden variety emotional distress, i.e., depression, anxiety, and eating disorder. The Court will issue limiting jury instructions. Fed. R. Evid. 403; *see* 9th Cir. Model Instruction 1.11.

**IT IS SO ORDERED.**

Dated: April 1, 2025

TRINA L. THOMPSON
United States District Judge