1   CAMERON W. FOX (SB# 218116)
    cameronfox@paulhastings.com
2   PAUL HASTINGS LLP
3   101 California Street
    Forty-Eighth Floor
4   San Francisco, California 94111
    Telephone:  (415) 856-7000
5   Facsimile:  (415) 856-7100

6   LINDSEY C. JACKSON (SB# 313396)
7   lindseyjackson@paulhastings.com
    PAUL HASTINGS LLP
8   515 Flower Street, 25th Floor
    Los Angeles, California 90071
9   Telephone:  (213) 683-6000
    Facsimile:  (213) 627-0705
10

11  Attorneys for Defendant
    LEVI STRAUSS & CO.

12

13                  UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15

16  JULIA BOIS,                          Case No. 3:23-CV-02772-TLT

17          Plaintiff,                   **DEFENDANT LEVI STRAUSS & CO.'S**
                                         **SUBMISSION OF PROPOSED**
18      vs.                              **REVISIONS TO JURY**
                                         **INSTRUCTIONS AND SPECIAL**
19  LEVI STRAUSS & CO.,                  **VERDICT FORM**

20          Defendant.
                                         Courtroom:      9
21                                       Judge:          Hon. Trina L. Thompson

22                                       Complaint Filed:  June 5, 2023
                                         Trial Date:       April 28, 2025
23

24

25

26

27

28

1     **TO THE COURT, PLAINTIFF JULIA BOIS AND HER COUNSEL OF RECORD**

2         As requested by the Court in ECF No. 160, Defendant Levi Strauss & Co. (LS&Co.) hereby

3     submits its proposed revisions to the current version of the Proposed Jury Instructions and Proposed

4     Verdict Form.  **All revisions are reflected in the attached in redline / tracked changes, for the**

5     **Court's convenience.**  Please note that LS&Co. has proposed use of the non-"bifurcated" single

6     CACI for punitive damages given that compensatory damages and punitive damages will be heard

7     together in the same phase.  If the Court approves these revisions, LS&Co. is happy to take the

8     laboring oar on renumbering the verdict form accordingly and submitting a final version for Court

9     approval.

10

11    DATED:  April 25, 2025                     PAUL HASTINGS LLP
                                                 CAMERON W. FOX
12                                               LINDSEY C. JACKSON

13

14                                               By: _____*/s/ Cameron W. Fox*_____
                                                          CAMERON W. FOX
15
                                                 Attorneys for Defendant LEVI STRAUSS & CO.
16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7   JULIA BOIS,                          Case No. 3:23-CV-2772-TLT

8            Plaintiff,                  **PROPOSED JURY INSTRUCTIONS**

9       vs.                             Re: ECF 142

10  LEVI STRAUSS & CO.,

11           Defendant.

12

13          On April 1, 2025, the parties provided proposed jury instructions with several disputed

14  instructions.  ECF 142.  The Court has reviewed the parties' agreements and issues the attached

15  proposed jury instructions.

16          **IT IS SO ORDERED.**

17

18  Dated:

19

20                                      _____
                                        TRINA L. THOMPSON
21                                      United States District Judge

22
23
24
25
26
27
28

## PRE-TRIAL INSTRUCTIONS[1]

### No. 1:  Duty of Jury (Court Reads and Provides Written Set of Instructions at the Beginning of Trial)

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected, and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

---

[1] The Court has bifurcated the trial into a liability phase and a damages phase.  ECF No. 145, at 6-7.  The jury will first determine liability of Defendant.  *Id.* at 7.  If Defendant is found liable, after a brief intermission, the same jury will determine damages Plaintiff is entitled to.  *Id.*  Thus, the pre-trial instructions will be read to the jury twice if necessary: first in the liability phase and second in the damages phase.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>No. 2: Claims and Defenses</u>

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiff Julia Bois asserts that Levi Strauss failed to promote her to Senior Director positions for which she was qualified because of her sex.  The plaintiff has the burden of proving these claims.

Levi Strauss denies those claims.

<u>No. 3:  Burden of Proof—Preponderance of the Evidence</u>

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

No. 4:  Burden of Proof— Clear and Convincing Evidence (Damages Only)[2]

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

---

[2] Clear and convincing evidence is only relevant to the issue of punitive damages under FEHA.  Thus, this jury instruction will only be read in the damages phase of the bifurcated trial.  *See* ECF 145, at 7.

<u>No. 5:  What is Evidence</u>

The evidence you are to consider in deciding what the facts are consists of:

1.  the sworn testimony of any witness;

2.  the exhibits that are admitted into evidence;

3.  any facts to which the lawyers have agreed; and

4.  any facts that I [may instruct] [have instructed] you to accept as proved.

<u>No. 6:  What is Not Evidence</u>

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered. In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

4. Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

No. 7:  Evidence for Limited Purpose

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

No. 8:  Direct and Circumstantial Evidence

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

No. 9:  Ruling on Objections

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

<u>No. 10:  Credibility of Witnesses</u>

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.   the opportunity and ability of the witness to see or hear or know the things testified to;

2.   the witness's memory;

3.   the witness's manner while testifying;

4.   the witness's interest in the outcome of the case, if any;

5.   the witness's bias or prejudice, if any;

6.   whether other evidence contradicted the witness's testimony;

7.   the reasonableness of the witness's testimony in light of all the evidence; and

8.   any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number

of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

No. 11:  Conduct of the Jury

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or

commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

<u>No. 12: Publicity During Trial</u>

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

1

<u>No. 13:  No Transcript Available to Jury</u>

2

3          I urge you to pay close attention to the trial testimony as it is given. During

4  deliberations you will not have a transcript of the trial testimony.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>No. 14:  Taking Notes</u>

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the courtroom. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

## No. 15:  Questions to Witnesses by Jurors During Trial

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses.  If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

1

2

<u>No. 16:  Bench Conferences and Recesses</u>

3

4        From time to time during the trial, it may become necessary for me to talk with the

attorneys out of the hearing of the jury, either by having a conference at the bench when

5

the jury is present in the courtroom, or by calling a recess. Please understand that while

6

you are waiting, we are working. The purpose of these conferences is not to keep relevant

7

information from you, but to decide how certain evidence is to be treated under the rules

8

of evidence and to avoid confusion and error.

9        Of course, we will do what we can to keep the number and length of these

10

conferences to a minimum. I may not always grant an attorney's request for a conference.

11

Do not consider my granting or denying a request for a conference as any indication of my

12

opinion of the case or of what your verdict should be.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>No. 17:  Outline of Trial</u>

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff Julia Bois will then present evidence, and counsel for Levi Strauss may cross-examine. Then defendant Levi Strauss may present evidence, and counsel for Ms. Bois may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

The trial has been split into a liability phase and a damages phase.  Thus, you will first determine whether Levi Strauss is liable.  Then, you will determine if Julia Bois is entitled to any damages.

No. 18:  Cautionary Instructions

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, if you think that you might have done so, please let me know now by raising your hand. [Wait for a show of hands]. I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break. Thank you for your careful adherence to my instructions.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>No. 19:  Stipulations of Fact</u>

The parties have agreed to certain facts that will be read to you. You must therefore treat these facts as having been proved.

No. 20:  Impeachment Evidence—Witness

The evidence that a witness lied under oath on a prior occasion in the past may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

No. 21:  Consideration of Evidence—Conduct of the Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth,

24

and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

1
2
<u>No. 22:  Communication with Court</u>

3       If it becomes necessary during your deliberations to communicate with me, you
4
may send a note through the clerk, signed by any one or more of you. No member of the
5
jury should ever attempt to communicate with me except by a signed writing. I will not
6
communicate with any member of the jury on anything concerning the case except in
7
writing or here in open court. If you send out a question, I will consult with the lawyers
8
before answering it, which may take some time. You may continue your deliberations
9
while waiting for the answer to any question. Remember that you are not to tell anyone—
10
including the court—how the jury stands, whether in terms of vote count or otherwise,
11
until after you have reached a unanimous verdict or have been discharged.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27       **<u>TRIAL INSTRUCTIONS (LIABILITY PHASE)</u>**
28

No. 23: Evidence for a Limited Purpose (2019 Promotion)

The testimony you are about to hear may be considered only for the limited purpose of determining:

1.  whether Levi Strauss's decision to not promote Ms. Bois in 2021 to the position of Senior Director of Consumer and U.S. Retail Marketing, or in 2022 to the position of Senior Director of Wholesale Marketing was motivated due to Ms. Bois's sex (including her 2021 pregnancy).

The testimony may not be used for any other purpose.

No. 24: Civil Rights—Title VII—Disparate Treatment—Promotion (2022)

Julia Bois claims that she was not promoted in 2022 to the position of Senior Director of Wholesale Marketing because of her sex (including her 2021 pregnancy). For that claim, the plaintiff has the burden of proving the following elements by a preponderance of the evidence:

1. Ms. Bois was not promoted by Levi Strauss in 2022 to the position of Senior Director of Wholesale Marketing;

2. Levi Strauss failed to promote Ms. Bois to that position in 2022 because of her sex (as defined above);

3. Ms. Bois was qualified for the promotion she sought;

4. A similarly-situated male employee, or similarly-situated non-pregnant employee, received the promotion instead.

If Ms. Bois has proven each of these elements by a preponderance of the evidence, she is entitled to your verdict.

No. 25:  Civil Rights—Title VII—Disparate Treatment—"Because of" Defined

"Because of" means "by reason of" or "on account of." This is sometimes referred to as "but-for causation." This form of causation is shown whenever a particular outcome would not have happened "but for" the purported cause. It is a reason without which Levi Strauss's decision not to promote Ms. Bois would not have occurred.

A but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a "but-for cause." Often, events have multiple but-for causes. For example, if a car accident occurred both because the defendant ran a red light and because the plaintiff failed to signal her turn at the intersection, we might call each a "but-for cause" of the collision.

In the context of this claim, a defendant cannot avoid liability just by citing some other factor that contributed to the challenged employment decision. So long as Ms. Bois's sex was one but-for cause of that decision, that is enough to trigger the law. A "but-for cause" does not mean the sole cause or even a primary cause.

1

2

<u>No. 26: Civil Rights—FEHA— Disparate Treatment—Essential Elements (2021 Promotion)</u>

3

4

 Ms. Bois claims that Levi Strauss wrongfully discriminated against her based on her sex (including her 2021 pregnancy).  To establish this claim, Ms. Bois must prove all of the following:

5

6

7
1.   That Levi Strauss was an employer;

8
2.   That Ms. Bois was an employee of Levi Strauss;

9
3.   That Levi Strauss denied Ms. Bois a promotion in 2021 to the position of Senior

10
Director of Consumer and U.S. Retail Marketing;

11
4.   That Ms. Bois's sex (which includes her 2021 pregnancy) was a substantial

12
motivating reason for Levi Strauss's denial of that promotion;

13
5.   That Ms. Bois was harmed; and

14

15
6.   That Levi Strauss's conduct was a substantial factor in causing Ms. Bois's harm.

16

17

18

19

20

21

22

23

24

25

26

27

28

No. 27: Civil Rights—FEHA— Disparate Treatment—Essential Elements (~~2021~~ 2022 Promotion)

Ms. Bois claims that Levi Strauss wrongfully discriminated against her based on her sex (including her 2021 pregnancy).  To establish this claim, Ms. Bois must prove all of the following:

1.  That Levi Strauss was an employer;

2.  That Ms. Bois was an employee of Levi Strauss;

3.  That Levi Strauss denied Ms. Bois a promotion in 2022 to the position of Senior Director of Wholesale Marketing;

4.  That Ms. Bois's sex (which includes her 2021 pregnancy) was a substantial motivating reason for Levi Strauss's denial of that promotion;

5.  That Ms. Bois was harmed; and

6.  That Levi Strauss's conduct was a substantial factor in causing Ms. Bois's harm.

No. 28:  Civil Rights—FEHA—"Substantial Motivating Reason" Explained

A "substantial motivating reason" is a reason that actually contributed to Levi Strauss's decision not to promote Ms. Bois to (a) the position of Senior Director of Consumer and U.S. Retail Marketing in 2021, or (b) the position of Senior Director of Wholesale Marketing in 2022.  It must be more than a remote or trivial reason.  It does not have to be the only reason motivating the decision not to promote Ms. Bois.

## **TRIAL INSTRUCTIONS (DAMAGES PHASE)**

### No. 29:  Evidence for a Limited Purpose (2019 Promotion)

The testimony you are about to hear may be considered only for the limited purpose of determining:

1.  whether Ms. Bois was constructively discharged; and
2.  whether Ms. Bois suffered damages for emotional distress.

The testimony may not be used for any other purpose.

33

1

2          <u>No. 30:  Evidence for a Limited Purpose (Early Medical History)</u>

3          The testimony you are about to hear may be considered only for the following

4   limited purpose:

5          If you decide that Levi Strauss's decision to not promote Ms. Bois in 2021 to the

6   position of Senior Director of Consumer and~~U.S.~~ Retail Marketing, or in 2022 to the

7   position of Senior Director of Wholesale Marketing due to Ms. Bois's sex (including her

8   2021 pregnancy), this information may only be considered in determining whether that

9   decision caused Ms. Bois to suffer damages for emotional distress.

10         The testimony may not be used for any other purpose.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

<u>No. 31:  Evidence for a Limited Purpose (Dr. Quick – Damages Only)</u>[3]

3

   You are about to hear testimony from Dr. William Quick who will testify about facts.  Fact

4

testimony is based on what the witness personally saw, heard, or did. As to the testimony

5

about facts, it is your job to decide which testimony to believe and which testimony not to

6

believe.  You may believe everything a witness says, or part of it, or none of it.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

[3] Dr. Quick may only testify during the damages phase of the bifurcated trial.  ECF 145, at 15.  Thus, this limiting instruction will only be read during the damages phase.

28

No. 32:  Damages—Proof

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Ms. Bois on one or more of her individual claims, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by Levi Strauss.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

1

2

<u>No. 33:  Measures of Types of Damages</u>

In determining the measure of damages, you should consider:

The nature and extent of the injuries;

The mental, physical and emotional pain and suffering experienced and that with reasonable probability will be experienced in the future;

The reasonable value of necessary medical care, treatment, and services received to the present time;

The reasonable value of necessary medical care, treatment, and services that with reasonable probability will be required in the future;

The reasonable value of wages, earnings, earning capacity, salaries, employment, business opportunities and employment opportunities lost up to the present time;

The reasonable value of wages, earnings, earning capacity, salaries, employment, business opportunities and employment opportunities that with reasonable probability will be lost in the future.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>No. 34:  Civil Rights – Title VII – "Constructive Discharge" Defined</u>

A constructive discharge occurs when the working conditions are so intolerable that a reasonable person in Ms. Bois's position would feel compelled to resign.

No. 35:  Damages—Mitigation

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

      1.      that the plaintiff failed to use reasonable efforts to mitigate damages; and

      2.      the amount by which damages would have been mitigated.

1

2

No. 36:  Punitive Damages (Federal)

3

4

If you find for Plaintiff Julia Bois, you may, but are not required to, award punitive

5

damages. The purposes of punitive damages are to punish a defendant and to deter similar

acts in the future.  Punitive damages may not be awarded to compensate a plaintiff.

6

The plaintiff has the burden of proving by a preponderance of the evidence that

7

punitive damages should be awarded and, if so, the amount of any such damages.

8

You may award punitive damages only if you find that Levi Strauss's decision not

9

to promote Ms. Bois to (a) the position of Senior Director of Consumer and U.S. Retail

10

Marketing in 2021, or (b) the position of Senior Director of Wholesale Marketing in 2022,

11

was malicious, oppressive or in reckless disregard of Ms. Bois's rights.  Conduct is

12

malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the

13

plaintiff.  Conduct is in reckless disregard of the plaintiff's rights if, under the

14

circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the

15

defendant acts in the face of a perceived risk that its actions will violate the plaintiff's

16

rights under federal law.  An act or omission is oppressive if the defendant injures or

17

damages or otherwise violates the rights of the plaintiff with unnecessary harshness or

18

severity, such as by misusing or abusing authority or power or by taking advantage of

19

some weakness or disability or misfortune of the plaintiff.

20

If you find that punitive damages are appropriate, you must use reason in setting

21

the amount.  Punitive damages, if any, should be in an amount sufficient to fulfill their

22

purposes but should not reflect bias, prejudice, or sympathy toward any party.  In

23

considering the amount of any punitive damages, consider the degree of reprehensibility

24

of the defendant's conduct.

25

In addition, you may consider the relationship of any award of punitive damages to

26

any actual harm inflicted on Ms. Bois.

27

Punitive damages may be awarded even if you award plaintiff only nominal, and

28

1    not compensatory, damages.

1

No. 37: Punitive Damages – Entity Defendant – Bifurcated Trial (First Phase)

2

(California)

3

If you decide that Levi Strauss's conduct caused Plaintiff Julia Bois harm, you

4

must decide whether that conduct justifies an award of punitive damages. The amount, if

5

any, of punitive damages will be an issue decided later.

6

7

At this time, you must decide whether Ms. Bois has proved that Levi Strauss

8

engaged in that conduct with malice, oppression, or fraud. To do this, Ms. Bois must

9

prove the following by clear and convincing evidence: That the conduct constituting

10

malice, oppression, or fraud was committed by one or more officers, directors, or

11

managing agents of Levi Strauss who acted on behalf of Levi Strauss.

12

"Malice" means that Levi Strauss acted with intent to cause injury or that Levi

13

Strauss's conduct was despicable and was done with a willful and knowing disregard of

14

the rights or safety of another. A defendant acts with knowing disregard when the

15

defendant is aware of the probable dangerous consequences of the defendant's conduct

16

and deliberately fails to avoid those consequences.

17

"Oppression" means that Levi Strauss's conduct was despicable and subjected Ms.

18

Bois to cruel and unjust hardship in knowing disregard of her rights.

19

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would

20

be looked down on and despised by reasonable people.

21

"Fraud" means that Levi Strauss intentionally misrepresented or concealed a

22

material fact and did so intending to harm Ms. Bois.

23

24

An employee is a "managing agent" if the employee exercises substantial

25

independent authority and judgment in corporate decision-making such that the

26

employee's decisions ultimately determine corporate policy.

27

28

No. 38:  Punitive Damages—Individual Defendant—Bifurcated Trial (Second Phase)

You must now decide the amount, if any, that you should award Ms. Bois in punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was Levi Strauss's conduct? In deciding how reprehensible Levi Strauss's conduct was, you may consider, among other factors:

1. Whether the conduct caused physical harm;

2. Whether Levi Strauss disregarded the health or safety of others;

3. Whether Ms. Bois was financially weak or vulnerable and Levi Strauss knew Ms. Bois was financially weak or vulnerable and took advantage of her;

4. Whether Levi Strauss's conduct involved a pattern or practice; and

5. Whether Levi Strauss acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and Ms. Bois's harm that Levi Strauss knew was likely to occur because of her conduct?

(c) In view of Levi Strauss's financial condition, what amount is necessary to punish it and discourage future wrongful conduct?  You may not increase the punitive award above an amount that is otherwise appropriate merely because Levi Strauss has substantial financial resources.

Punitive damages may not be used to punish Levi Strauss for the impact of its alleged misconduct on persons other than Ms. Bois.

No. 37: Punitive Damages – Entity Defendant – Trial Not Bifurcated

If you decide that Levi Strauss's conduct caused Plaintiff Julia Bois harm, you must decide whether that conduct justifies an award of punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Levi Strauss only if Ms. Bois proves that Levi Strauss engaged in that conduct with malice, oppression, or fraud.  To do this, Ms. Bois must prove the following by clear and convincing evidence:  That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Levi Strauss who acted on behalf of Levi Strauss.

"Malice" means that Levi Strauss acted with intent to cause injury or that Levi Strauss's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A defendant acts with knowing disregard when the defendant is aware of the probable dangerous consequences of the defendant's conduct and deliberately fails to avoid those consequences.

"Oppression" means that Levi Strauss's conduct was despicable and subjected Ms. Bois to cruel and unjust hardship in knowing disregard of her rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Levi Strauss intentionally misrepresented or concealed a material fact and did so intending to harm Ms. Bois.

An employee is a "managing agent" if the employee exercises substantial independent authority and judgment in corporate decision-making such that the employee's decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive

damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was Levi Strauss's conduct? In deciding how reprehensible Levi Strauss's conduct was, you may consider, among other factors:

1. Whether the conduct caused physical harm;

2. Whether Levi Strauss disregarded the health or safety of others;

3. Whether Ms. Bois was financially weak or vulnerable and Levi Strauss knew Ms. Bois was financially weak or vulnerable and took advantage of her;

4. Whether Levi Strauss's conduct involved a pattern or practice; and

5. Whether Levi Strauss acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and Ms. Bois's harm that Levi Strauss knew was likely to occur because of her conduct?

(c) In view of Levi Strauss's financial condition, what amount is necessary to punish it and discourage future wrongful conduct?  You may not increase the punitive award above an amount that is otherwise appropriate merely because Levi Strauss has substantial financial resources.

Punitive damages may not be used to punish Levi Strauss for the impact of its alleged misconduct on persons other than Ms. Bois.

1

2

3

# DELIBERATION INSTRUCTIONS[4]

~~No. 39~~No. 38:  Duty to Deliberate

4

5

6

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

7

8

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

9

10

11

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

12

13

14

15

16

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

17

18

19

20

21

22

23

24

25

26

27

28

---

[4] The Court has bifurcated the trial into a liability phase and a damages phase.  ECF No. 145, at 6-7.  The jury will first determine liability of Defendant.  *Id.* at 7.  If Defendant is found liable, after a brief intermission, the same jury will determine damages Plaintiff is entitled to.  *Id.*  Thus, deliberation instructions will be read to the jury twice if necessary: first in the liability phase and second in the damages phase.

~~No. 40~~No. 39:  Return of Verdict

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

## **POST-TRIAL INSTRUCTIONS**

No. 41No. 40:  Discharge Instruction

Now that the case has been concluded, some of you may have questions about the confidentiality of the proceedings. Now that the case is over, you are free to discuss it with any person you choose. By the same token, however, I would advise you that you are under no obligation whatsoever to discuss this case with any person.

If you would prefer not to discuss the case with anyone, but are feeling undue pressure to do so, please feel free to contact the courtroom deputy, who will notify me and I will assist.

1
2
3
4                        UNITED STATES DISTRICT COURT
5                      NORTHERN DISTRICT OF CALIFORNIA
6
7    JULIA BOIS,                              Case No.  23-cv-02772-TLT
8                    Plaintiff,
9         v.                                  **PROPOSED VERDICT FORM**
10   LEVI STRAUSS & CO.,                       Re: ECF 143
11                    Defendant.
12
13        On April 1, 2025, the parties provided proposed verdict form with several disputed verdict
14   questions. ECF 143. The Court has reviewed the parties' arguments and issues the attached
15   proposed verdict form.
16        **IT IS SO ORDERED.**
17   Dated:
18                                              _____
19                                              TRINA L. THOMPSON
                                                United States District Judge
20
21
22
23
24
25
26
27
28

**LIABILITY PHASE**

I.    **DISPARATE TREATMENT**

    A.    **DISPARATE TREATMENT UNDER FEHA (INTENTIONAL DISCRIMINATION) – PROMOTION: SENIOR DIRECTOR OF CONSUMER AND** ~~U.S.~~ **RETAIL MARKETING (2021)**

Question No. 1. Was Levi Strauss an employer?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 6.*

Question No. 2. Was Julia Bois an employee of Levi Strauss?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 6.*

Question No. 3. Did Levi Strauss decide not to promote Julia Bois to the Senior Director of U.S. Retail Marketing position in 2021?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 6.*

Question No. 4. Was Julia Bois's sex (including her 2021 pregnancy) a substantial motivating reason for Levi Strauss's decision not to promote her to the Senior Director of Consumer~~U.S.~~ Retail Marketing position in 2021?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 6.*

~~Question No. 5. Was Levi Strauss's decision not to promote Julia Bois to the Senior Director of~~
~~U.S. Retail Marketing position in 2021 a substantial factor in causing harm to Julia Bois?~~
~~Yes_____No _____~~
*~~Please go to the next question.~~*

### B.    DISPARATE TREATMENT UNDER FEHA (INTENTIONAL DISCRIMINATION) – PROMOTION: SENIOR DIRECTOR OF WHOLESALE MARKETING (2022)

<u>Question No. 6.</u> Was Levi Strauss an employer?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 11.*

<u>Question No. 7.</u> Was Julia Bois an employee of Levi Strauss?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 11.*

<u>Question No. 8.</u> Did Levi Strauss decide not to promote Julia Bois to the Senior Director of Wholesale Marketing position in 2022?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 11.*

<u>Question No. 9.</u> Was Julia Bois's sex (including her 2021 pregnancy) a substantial motivating reason for Levi Strauss's decision?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 11.*

~~Question No. 10. Was Levi Strauss's decision not to promote Julia Bois to the Senior Director of Wholesale Marketing position in 2022 a substantial factor in causing harm to Julia Bois?~~

~~Yes_____No_____~~

~~*Please go to the next question.*~~

C.    **DISPARATE TREATMENT UNDER TITLE VII (INTENTIONAL DISCRIMINATION) – PROMOTION: SENIOR DIRECTOR OF WHOLESALE MARKETING (2022)**

Question No. 11. Did Julia Bois prove by a preponderance of the evidence that she was qualified for a promotion to the Senior Director of Wholesale Marketing position in 2022?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, you have completed the verdict form and should now have the foreperson sign and date this form, then follow the instructions after the signature block.*

Question No. 12. Did Julia Bois prove by a preponderance of the evidence that Levi Strauss decided not to promote her to the Senior Director of Wholesale Marketing position in 2022 because of her sex (including her 2021 pregnancy)?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, you have completed the verdict form and should now have the foreperson sign and date this form, then follow the instructions after the signature block.*

Question No. 13. Did Julia Bois prove by a preponderance of the evidence that a male employee, or a non-pregnant, employee who was similarly situated to Julia Bois received the Senior Director of ~~U.S.~~ Wholesale Marketing position in 2022 instead of Julia Bois?

United States District Court
Northern District of California

Yes_____No _____

***You have completed the verdict form and should now have the foreperson sign and date this form, then follow the instructions after the signature block.***

DATED: _____          _____

                                                                        Presiding Juror

***Please return all verdict forms to the clerk.***

United States District Court
Northern District of California

**DAMAGES PHASE**[1]

## II. COMPENSATORY DAMAGES

### A. DISPARATE TREATMENT (INTENTIONAL DISCRIMINATION) – PROMOTION: SENIOR DIRECTOR OF CONSUMER AND ~~U.S.~~ RETAIL MARKETING (2021)

*Question No. 5. Was Levi Strauss's decision not to promote Julia Bois to the Senior Director of Consumer and Retail Marketing position in 2021 a substantial factor in causing harm to Julia Bois?*

*Yes_____ No_____*

*Please go to the next question*

Question No. 1. Did Julia Bois prove by a preponderance of the evidence that her working conditions became so intolerable as a result of Levi Strauss's decision not to promote her to the Senior Director of Consumer and ~~U.S.~~ Retail Marketing position in 2021 that a reasonable person in her position would feel compelled to resign when she did?

Yes_____No _____

Question No. 2. What is the amount of damages that Julia Bois proved by a preponderance of the evidence that she sustained as a result of her resignation in March 2023?

Economic Damages $_____

*If your answer is greater than $0, please go to and answer the next question.*

*If your answer is $0, please go to and answer Question No. 5.*

Question No. 3. Did Julia Bois fail to use reasonable efforts to mitigate her damages after her separation from Levi Strauss?

Yes_____No _____

*If your answer is no, please go to and answer the next question.*

*If your answer is yes, please go to and answer Question No. 5.*

---

[1] The questions included in the Damages Phase verdict form will depend on which claims the jury finds Defendant liable for in the Liability Phase.

<u>Question No. 4.</u> What is the dollar amount, if any, by which the amount of Julia Bois's damages should be reduced for failure to mitigate her damages?

Amount $_____

*Please go to the next question.*

<u>Question No. 6.</u> Did Julia Bois prove by a preponderance of the evidence that she suffered damages, apart from her resignation, as a result of Levi Strauss's decision not to promote her to the Senior Director of <u>Consumer and</u><s>U.S.</s> Retail Marketing in 2021?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 12.*

<u>Question No. 7.</u> What is the amount of economic damages that Julia Bois proved by a preponderance of the evidence that she sustained, apart from her resignation, as a result of Levi Strauss's decision not to promote her to the Senior Director of <u>Consumer and</u><s>U.S.</s> Retail Marketing in 2021?

Economic Damages $_____

*Please go to the next question.*

<u>Question No. 8.</u> Did Julia Bois suffer emotional distress as a result of Levi Strauss's decision not to promote her to the Senior Director of U.S. Retail Marketing position in 2021?

Yes_____No _____

*If your answer is yes, please go to the next question.*

*If your answer is no, then go to and answer Question No. 12.*

<u>Question No. 9.</u> Was Levi Strauss's decision not to promote her to the Senior Director of <s>U.S.</s><u>Consumer and</u> Retail Marketing position in 2021 a substantial factor in causing Julia Bois's emotional distress? Yes_____No ____

*If your answer is yes, please go to the next question.*

*If your answer is no, then go to and answer Question No. 12.*

<u>Question No. 10.</u> What amount of damages, if any, do you award Julia Bois for her past noneconomic loss, including mental suffering/emotional distress, due to Levi Strauss's decision not to promote her to the Senior Director of <u>Consumer and</u><s>U.S.</s> Retail Marketing position in 2021?

Past Emotional Distress $_____

*Please go to the next question.*

<u>Question No. 11.</u> What amount of damages, if any, do you award Julia Bois for her future noneconomic loss, including mental suffering/emotional distress due to Levi Strauss's decision not to promote her to the Senior Director of <u>Consumer and</u><s>U.S.</s> Retail Marketing position in 2021?

Future Emotional Distress $_____

*Please go to the next question.*

**B.    DISPARATE TREATMENT (INTENTIONAL DISCRIMINATION) – PROMOTION: SENIOR DIRECTOR OF WHOLESALE MARKETING (2022)**

<u>Question No. 10. Was Levi Strauss's decision not to promote Julia Bois to the Senior Director of Wholesale Marketing position in 2022 a substantial factor in causing harm to Julia Bois?</u>

<u>Yes     No     </u>

*Please go to the next question.*

<u>Question No. 12.</u> Did Julia Bois prove by a preponderance of the evidence that her working conditions became so intolerable as a result of Levi Strauss's decision not to promote her to the Senior Director of Wholesale Marketing position in 2022 that a reasonable person in her position would feel compelled to resign when she did?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 16.*

United States District Court
Northern District of California

Question No. 13. What is the amount of economic damages, if any, that Julia Bois proved by a preponderance of the evidence that she sustained as a result of her resignation in March 2023?

Economic Damages $_____

*If your answer is greater than $0, please go to and answer the next question.*

*If your answer is $0, please go to and answer Question No. 16.*

8

Question No. 14. Did Julia Bois fail to use reasonable efforts to mitigate her damages after her resignation from Levi Strauss?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 16.*


Question No. 15. What is the dollar amount, if any, by which the amount of Julia Bois's damages should be reduced for failure to mitigate her damages?

Amount $_____

*Please go to the next question.*


Question No. 16. Did Julia Bois prove by a preponderance of the evidence that she suffered damages, apart from her resignation, as a result of Levi Strauss's decision not to promote her to the Senior Director of Wholesale Marketing in 2022?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 22.*

Question No. 17. What is the amount of economic damages, if any, that Julia Bois proved by a preponderance of the evidence that she sustained, apart from her resignation as a result of Levi Strauss's decision not to promote her to the Senior Director of Wholesale Marketing in 2022?

Economic Damages $_____

*Please go to the next question.*

United States District Court
Northern District of California

United States District Court
Northern District of California

Question No. 18. Did Julia Bois suffer emotional distress as a result of Levi Strauss's decision not to promote her to the Senior Director of Wholesale Marketing position in 2022?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 22.*

Question No. 19. Was Levi Strauss's decision not to promote Ms. Bois to the Senior Director of Wholesale Marketing position in 2022 a substantial factor in causing Julia Bois's emotional distress?

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 22.*

Question No. 20. What amount of damages, if any, do you award Julia Bois for her past noneconomic loss, including mental suffering/emotional distress due to Levi Strauss's decision not to promote Ms. Bois to the Senior Director of Wholesale Marketing position in 2022?

Past Emotional Distress $_____

*Please go to the next question.*

Question No. 21. What amount of damages, if any, do you award Julia Bois for her future noneconomic loss, including mental suffering/emotional distress, due to Levi Strauss's decision not to promote Ms. Bois to the Senior Director of Wholesale Marketing position in 2022?

Future Emotional Distress $_____

*Please go to the next question.*

### III.    PUNITIVE DAMAGES

####     A.    PUNITIVE DAMAGES UNDER FEHA

Question No. 22. Did you enter a dollar amount greater than $0 for any one or more of the following questions?:

- Question 2
- Question 6

- Question 9
- Question 10

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, please go to and answer Question No. 24.*

Question No. 23. Did Ms. Bois prove by clear and convincing evidence that Levi Strauss's decision not to promote her to (a) the position of Senior Director of Consumer and~~U.S.~~ Retail Marketing in 2021, or (b) the position of Senior Director of Wholesale Marketing in 2022, was committed by an officer, director, or managing agent of Levi Strauss who acted with malice, oppression, or fraud? Yes____No ____

*Please go to and answer the next question.*


**B.    PUNITIVE DAMAGES UNDER TITLE VII**

Question No. 24. Did you enter a dollar amount greater than $0 for either of the following questions?:

- Question 13
- Question 17
- Question 20
- Question 21

Yes_____No _____

*If your answer is yes, please go to and answer the next question.*

*If your answer is no, you have completed the verdict form and should now have the foreperson sign and date this form, then follow the instructions after the signature block.*


Question No. 25. Did Ms. Bois prove by a preponderance of the evidence that Levi Strauss's decision not to promote Ms. Bois to the position of Senior Director of Wholesale Marketing in 2022 was malicious, oppressive or in reckless disregard of Ms. Bois's rights? Yes_____No _____

*You have completed the verdict form and should now have the foreperson sign and date this form, then follow the instructions after the signature block.*

DATED: _____          _____

                                                                  Presiding Juror

*Please return all verdict forms to the clerk.*

United States District Court
Northern District of California