1  CAMERON W. FOX (SB# 218116)
   cameronfox@paulhastings.com
2  PAUL HASTINGS LLP
   101 California Street
3  Forty-Eighth Floor
   San Francisco, California 94111
4  Telephone: (415) 856-7000
   Facsimile: (415) 856-7100
5
   LINDSEY C. JACKSON (SB# 313396)
6  lindseyjackson@paulhastings.com
   PAUL HASTINGS LLP
7  515 Flower Street, 25th Floor
   Los Angeles, California 90071
8  Telephone: (213) 683-6000
   Facsimile: (213) 627-0705
9
   Attorneys for Defendant
10 LEVI STRAUSS & CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA BOIS,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>LEVI STRAUSS & CO.,<br><br>　　　　　Defendant. | Case No. 3:23-CV-2772-TLT<br><br>**DEFENDANT LEVI STRAUSS & CO.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS**<br><br>Date:　　　　August 19, 2025<br>Time:　　　　2:00 p.m.<br>Courtroom:　9<br>Judge:　　　Hon. Trina L. Thompson<br><br>Complaint Filed:　June 5, 2023<br>Trial Date:　　　April 28, 2025 |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 5

II. RELEVANT FACTUAL BACKGROUND ........................................................................ 8

    A. Boies Schiller's Failure To Meet And Confer In Advance Of The Parties' Pretrial Filing Deadline ............................................................................................. 8

    B. Boies Schiller's Failure To Meet And Confer In Advance Of The Parties' Joint Jury Instructions and Joint Verdict Form Filing Deadline .............................. 9

    C. Boies Schiller's Failure To Meet And Confer In Advance Of The Parties' Joint Certification Of Counsel Regarding Exhibits Offered During Trial Filing Deadline ................................................................................................................... 10

III. ARGUMENT ...................................................................................................................... 11

    A. Sanctions Under 28 U.S.C. Section 1927 ............................................................... 11

    B. Sanctions Under The Court's Inherent Powers ....................................................... 11

    C. Boies Schiller Has Engaged In Pervasive Bad Faith By Repeatedly Violating The Court's Orders Thereby Justifying The Imposition Of Sanctions ................................................................................................................. 13

    D. The Court Should Award Monetary Sanctions And Require The Boies Schiller Partners At Issue To Develop And Provide Training To Their Litigation Associates Regarding The Professional Responsibilities of Trial Counsel ..................................................................................................................... 15

IV. CONCLUSION ................................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. Unites for Kids v. Rousseau*,
   985 F.3d 1075 (9th Cir. 2021) .................................................................................................. 12

*Andrews v. Equinox Holdings, Inc.*,
   570 F. Supp. 3d 803 (N.D. Cal. 2021) ...................................................................................... 15

*Ayer v. White*,
   No. CV 21-08773-RSWL-RAOx, 2022 U.S. Dist. LEXIS 117 307
   (C.D. Cal. June 28, 2022) .......................................................................................................... 13

*Caputo v. Tungsten Heavy Powder, Inc.*,
   96 F.4th 1111 (9th Cir. 2024) .................................................................................................... 11

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ........................................................................................................ 11, 12, 15

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) .................................................................................................................. 12

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) ............................................................................................. 12, 13

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ......................................................................................... 11, 12, 13

*Goodyear Tire & Rubber Co. v. Haeger*,
   581 U.S. 101 (2017) ............................................................................................................ 11, 12

*Human Rights Def. Ctr.*,
   No. 20-cv-01296-JCS, 2021 U.S. Dist. LEXIS 59778
   (N.D. Cal. Mar. 28, 2021) .......................................................................................................... 15

*In re Hubbard*,
   No. 12-cv-1975-L(WMc), 2013 U.S. Dist. LEXIS 14949 (S.D. Cal. Feb. 4, 2013) .............. 15

*In re Keegan Mgmt. Co., Sec. Litig.*,
   78 F.3d 431 (9th Cir. 1996) ....................................................................................................... 11

*In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., & Prod. Liab. Litig.*,
   No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115 (N.D. Cal. Mar. 17, 2017) .................. 15

*Jones v. Nat'l R.R. Passenger Corp.*,
   No. 15-cv-02726-TSH, 2024 U.S. Dist. LEXIS 175995 (N.D. Cal. Sept. 27, 2024) ............. 13

*Link v. Wabash R.R. Co.*,
   370 U.S. 626 (1962) .................................................................................................................. 11

*Matter of Yagman*,
   796 F.2d 1165 (9th Cir. 1986) ................................................................................................... 14

*MGIC Indem. Corp. v. Moore*,
   952 F.2d 1120 (9th Cir. 1991).......................................................................................... 11

*Pacific Harbor Cap., Inc. v. Carnival Air Lines, Inc.*,
   210 F.3d 1112 (9th Cir. 2000)..................................................................................... 11, 12

*PopTop Corp. v. Rakuten Kobo, Inc.*,
   No. 20-cv-04482-DMR, 2022 U.S. Dist. LEXIS 55708
   (N.D. Cal. Mar. 28, 2022), *aff'd*,
   No. 2022-1688, 2023 WL 2783178 (Fed. Cir. Apr. 5, 2023) ................................................. 15

*Primus Auto . Fin. Servs. Inc. v. Batarse*,
   115 F. 3d 644 (9th Cir. 1997)........................................................................................... 12

**STATUTES**

28 U.S.C. § 1927 ................................................................................................. 7, 11, 13, 14

**RULES**

L.R. 5-1(g)(1)(B)........................................................................................................... 10

I.  **INTRODUCTION**

Levi Strauss & Co. ("LS & Co.") does not take lightly its decision to ask the Court to address the behavior of Ms. Bois's counsel—especially post-verdict. LS & Co. nonetheless makes this request because (1) Plaintiff's counsel (Boies Schiller Flexner LLP) has *continued* to miss deadlines and not confer on joint submissions in the weeks following the trial, and (2) Plaintiff's counsel's most egregious incidents have forced the Court and LS & Co. to spend time and resources that should not have been needed, and that should not be overlooked simply because LS & Co. won at trial.

In this motion, LS & Co. requests reimbursement for increased costs on three evenings when Plaintiff's counsel's refusal to finalize joint filings caused not only missed deadlines, but also for the administrative support staff and attorneys representing LS & Co. to work until (and past) midnight. In addition, to recognize the impact these antics had on the Court, LS & Co. also requests nonmonetary sanctions tailored to deter future misbehavior. Plaintiff's counsel has shown a pattern of disregard for the Court's authority and procedural rules that is deeply concerning. It is important that attorneys in their firm know *not* to follow the example set in this case. For that reason, LS & Co. respectfully suggests that the Boies Schiller partners involved in this case be required to provide a one-hour training to litigators in their respective offices (San Francisco and New York) regarding professional responsibilities at trial.

Of course, this motion, and the limited incidents for which LS & Co. seeks reimbursement, do not exist in a vacuum. Plaintiff's counsel has acted inappropriately toward the Court, and violated multiple Court orders throughout the case. That behavior dates back to Fall 2023, when – as the Court is aware – lead counsel for Plaintiff insisted he did not have to participate in a Court-mandated settlement conference, took out his anger on Magistrate Judge Alex Tse at the initial conference, and then announced Plaintiff would not participate. The Court then assigned the Chief Magistrate Judge (Hon. Donna Ryu), but lead counsel for Plaintiff refused to answer basic questions by Judge Ryu during the settlement conference, and eventually walked out. The bad behavior continued during 2024, most notably in hearings and conferences

in Courtroom 9, when lead counsel for Plaintiff talked over and bellowed at Judge Trina Thompson, refusing to follow basic directions on how to act in a courtroom.

It is against that background that Plaintiff's counsel's repeated violations of Court orders regarding pretrial and trial filings must be viewed.  As the Court has already noted in various orders, Plaintiff's counsel repeatedly failed to meet and confer to prepare joint filings that were due to the Court in the lead-up to (and during) trial, causing numerous missed deadlines.  **This motion seeks relief only for three instances when Plaintiff's counsel's refusal to meet and confer on trial-related joint submissions directly led to the parties missing Court-imposed deadlines**:

- **First**, on the night of February 28, 2025 (the parties' pretrial filing deadline), Boies Schiller shut down the meet and confer process and abandoned making a joint filing.  Instead, Boies Schiller unilaterally filed Plaintiff's own pretrial statement and statement of the case, including an exhibit list that was never previously disclosed to LS & Co. and an "exhibit list" that listed every single document produced in the case by any party.  *See* ECF Nos. 113, 115, 116, 117, 145 at 1:19-2:4.  LS & Co.'s counsel and administrative staff worked past 1:00 a.m. on March 1, 2025, waiting for Plaintiff's sign-off to file jointly, and then reviewing their surprise unilateral filing, and preparing LS & Co.'s objection.

- **Second**, on April 25, 2025, the last business day before the first day of trial, Boies Schiller refused to meet and confer with LS & Co. regarding joint jury instructions and the joint proposed verdict form, thereby causing the parties to miss that Court-ordered filing deadline.  *See* ECF Nos. 156-158, 160.  Again, LS & Co.'s counsel worked to achieve a joint filing, only to be left hanging when Plaintiff's counsel decided to stop participating.  *See* ECF No. 156.

- **Third**, after the verdict, Plaintiff's counsel foiled yet another joint filing.  On May 15, 2025, Boies Schiller refused to sign-off on the filing of admitted and rejected exhibits, causing that deadline to be missed as well.  With regard to the

-6-

LS&CO.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS
CASE NO. 3:23-CV-2772-TLT

LEGAL_US_W # 183755380.9

rejected exhibits, Boies Schiller refused to sign off on filing Exhibit 90 (the one exhibit that was offered but not admitted at trial) because they insisted on including their PowerPoint *slide decks* from their opening statement and closing argument, as if they were exhibits that had been offered into evidence and rejected by the Court. When LS & Co. pushed back on that, Boies Schiller cut off communication, leaving Paul Hastings and its staff waiting for approval to file until (and beyond) the midnight filing deadline. As a result, neither the rejected nor admitted exhibits could be filed on time.

This behavior has had real consequences for the Court and for LS & Co.

**As to the Court**: When Plaintiff makes unilateral filings in violation of the Court's orders, it increases the number of documents the Court must read. And when the Court's deadlines for joint filings are missed, it cuts into the Court's limited time to prepare for trial and finalize documents.

**As to LS & Co.**: LS & Co. necessarily paid for Paul Hastings and its administrative support staff to try repeatedly to get Plaintiff's counsel to meet and confer, and to stand by into the evening to file documents on the deadlines discussed above. In addition, LS & Co. also had to spend fees on explanations to the Court as to why the parties were unable to meet Court deadlines or why LS & Co. objects to Plaintiff's unilateral filings.

In light of all of the above, LS & Co. asks that, pursuant to 28 U.S.C. Section 1927 ("Section 1927") and the inherent authority of this Court, that the Court enter sanctions against Plaintiff's counsel at Boies Schiller for repeated failures to adhere to Court orders and Court-imposed deadlines. Specifically, LS & Co. asks that the Court (1) award $15,236.41 to LS & Co. to reimburse it for increased litigation costs,[1] (2) order the partners at Boies Schiller who engaged in these behaviors to conduct a one-hour training for litigators in their respective offices regarding professional responsibility in the context of trial; and (3) enter any other sanction the Court deems appropriate based on the concerns the Court has raised repeatedly about the conduct of the Boies

---

[1] LS & Co. does not seek to recover the fees and costs associated with the drafting and filing of this Motion for Sanctions.

Schiller attorneys on this case.

## II. RELEVANT FACTUAL BACKGROUND

### A. Boies Schiller's Failure To Meet And Confer In Advance Of The Parties' Pretrial Filing Deadline

The Court's Standing Order required Plaintiff and LS & Co. to file, on February 28, 2025, a joint pretrial statement and jointly file a proposed Statement of the Case to be read to the jury. After meeting and conferring with LS & Co. over the Statement of the Case and joint pretrial statement, Plaintiff unilaterally filed her own versions of those documents (on March 1, 2025 at 12:53 a.m. and 1:28 a.m., respectively), having rejected portions of LS & Co.'s input on both. *See* Fox Decl., ¶ 2. The meet and confer process was heading towards an agreement, until Plaintiff decided she was done agreeing. *Id*. Nevertheless, **Paul Hastings's support staff worked 3 hours of overtime to get the jointly submitted documents filed**. *See id*.

Plaintiff's unilateral pretrial statement included a 38-page "Plaintiff's Exhibit List" that attached a full list of every document produced in the case by every party as her "exhibit list," along with the discrete list of LS & Co.'s numbered trial exhibits that LS & Co. had provided to her, and a "Plaintiff's Witness List" that LS & Co. had never seen before. *See* ECF No. 115. The exhibit list and the witness list should have been provided to LS & Co. for review and comment before the February 28 filing deadline for the Joint Pretrial Statement. On March 3, 2025, LS & Co. filed Objections to Plaintiff's Unilateral Statement of the Case and Pretrial Statement ("Objections"). *See* ECF No. 116.

The parties were then ordered to meet and confer again and file a joint pretrial statement and joint Statement of the Case by March 5, 2025. *See* ECF No. 117. However, Plaintiff did not provide LS & Co. with her real exhibit list until Saturday, March 8 (the day after the list was due to the Court, based on Plaintiff's counsel's pledge to meet a new March 7 self-imposed deadline). *See* Fox Decl., ¶ 4. As a result, the parties were not able to file a complete exhibit list that included the parties' respective objections and responses to objections until March 17, 2025. *See* ECF Nos. 130, 131. **LS & Co. incurred $5,560.04 (in attorneys' fees and staff overtime) to**

**handle the late-night antics by Plaintiff's counsel, and to prepare and file LS & Co.'s Objections.**  Fox Decl., ¶ 3.

### B. Boies Schiller's Failure To Meet And Confer In Advance Of The Parties' Joint Jury Instructions and Joint Verdict Form Filing Deadline

On April 24, 2025, the Court ordered "[c]ounsel to submit any changes or corrections to the jury instructions or verdict form by the end of business today."  ECF No. 155.  LS & Co. sent Boies Schiller its changes to the verdict form at 12:35 p.m. and, at Plaintiff's request, later submitted the same changes in redline at 2:02 p.m.  *See* ECF No. 156 at 8-10.  Instead of attempting to meet and confer further, Josh Schiller, Plaintiff's lead counsel, asserted that they "are not going to communicate with [Ms. Fox, lead counsel for LS & Co.,] further."  *Id.* at 8.  Mr. Schiller then proceeded to send several emails to LS & Co.'s counsel that intentionally removed Ms. Fox from the chain.  *See id.*, *generally*.  When LS & Co. acknowledged this behavior and attempted to add Ms. Fox back into the email communications, Mr. Schiller ironically insisted, "[w]e are not communicating with you given your deliberate immature behavior.  If you want to call me to apologize, I am happy to listen."  *Id.* at 7.  In the interim, in an effort to get the documents filed timely, LS & Co. repeatedly asked Boies Schiller for any edits they had to the jury instructions and verdict form and explained why the CACI, rather than case law, was the appropriate citation for LS & Co.'s proposed changes to the jury instructions.  *See id.* at 5-7.  In blatant contravention of the Court's order (that the parties had received earlier that day), Mr. Schiller falsely asserted that "there is nothing requiring anything to be submitted by a certain time today."  *Id.* at 5.

Because Boies Schiller continuously refused to communicate with LS & Co.'s lead counsel or provide edits to the jury instructions or verdict form, at 5:03 p.m. on April 24, 2025, LS & Co. filed a Notice of Inability to Meet Court-Ordered Deadline & Request for Briefing Schedule on Sanctions Motion ("Notice").  *See id.*; *see, also*, Fox Decl., ¶ 5.  In its filing, LS & Co. explained that, in light of the Court's prior orders regarding unilateral filings, LS & Co. "feels it is not appropriate to file a version of these documents that does not reflect Plaintiff's input, but

no input has been given." ECF No. 156.  Approximately 15 minutes later, Plaintiff filed a unilateral proposed verdict form and unilateral jury instructions.  *See* ECF Nos. 157, 158.

The Court acknowledged Boies Schiller's behavior in a subsequent order:

> On April 24, 2025, the Court ordered counsel to meet and confer to discuss jury instructions and verdict forms as set forth on the record.  Counsel were further ordered to submit any changes or corrections to the jury instructions or verdict form by the end of the business day, April 24, 2025.  Plaintiff failed to meet and confer with Defendant and has missed another deadline in this case.  In violation of court orders, Plaintiff then unilaterally filed their own revisions to the jury instructions and verdict form.

ECF No. 160.

**LS & Co. incurred $9,306 in attorneys' fees in preparing its Notice and attempting to meet and confer with Plaintiff's counsel after they refused to communicate with LS & Co.'s lead counsel.**  Fox Decl., ¶ 5.

### C. Boies Schiller's Failure To Meet And Confer In Advance Of The Parties' Joint Certification Of Counsel Regarding Exhibits Offered During Trial Filing Deadline

The parties' deadline to file Admitted Exhibits and Offered, But Not Admitted, Exhibits during trial was May 15, 2025.  Fox Decl., ¶ 6, Ex. A.  The exhibit filing had to include a Joint Certification of Counsel.  *Id*.  Not having heard from Plaintiff, LS & Co. took the lead by drafting the Joint Certifications, which included the two exhibit lists and preparing the exhibits.  *Id*.  LS & Co. sent the proposed filing to Plaintiff for sign-off.  *See id*.  When Plaintiff responded, she requested that the closing slide decks be included in the Offered, But Not Admitted, Exhibits filing.  *See id.*  LS & Co. cited to Local Rule 5-1(g)(1)(B) and the parties' jury instructions to explain that a slide deck does not constitute an Offered, But Not Admitted Exhibit.  *See id*.  Instead of getting documents on file or continuing to meet and confer, Boies Schiller told LS & Co.'s counsel that they "should agree to extend the deadline a week." *Id*.[2]  LS & Co. explained that "[t]his is a Court-required deadline," "not something the parties get to agree to push off" and that "[t]hese missed deadlines are not fair to our staff" who have to stay up late on standby to get filings submitted, but Plaintiff never responded to these emails.  *Id*.

---

[2] No edits were made between the last circulated version of the Admitted Exhibits filing on May 15 and the version that was ultimately filed.

**Paul Hastings's support staff worked 4.5 hours of overtime (totaling $370.37) standing by to file the Admitted Exhibits and Admitted, But Not Offered Exhibits.** *See* Fox Decl., ¶ 7.

## III.  ARGUMENT

### A.  Sanctions Under 28 U.S.C. Section 1927

Courts have the power to require an attorney who "multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. In other words, "Section 1927 authorizes the imposition of sanctions against any lawyer who wrongfully proliferates litigation proceedings once a case has commenced." *Pacific Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1117 (9th Cir. 2000). The Ninth Circuit assesses sanctions when bad faith is found "under a subjective standard. Knowing or reckless conduct meets this standard." *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1121-22 (9th Cir. 1991).

Bad faith "is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (citations omitted). If the conduct is merely reckless, the moving party must also show at least one additional factor such as frivolousness, harassment, or an improper purpose. *See Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) ("Sanctions [pursuant to Section 1927] are available for . . . recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose.").

Section 1927 renders any "attorney who reviews and approves motions, applications, and briefs filed in a case [] responsible for the resulting multiplication of proceedings even when he does not sign his name to those filings or personally argue them before the court." *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1154 (9th Cir. 2024).

### B.  Sanctions Under The Court's Inherent Powers

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"

1  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). "It is well established that a federal court may consider collateral issues [like sanctions] after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). Imposing monetary sanctions under the Court's inherent power requires a finding of either: "(1) a willful violation of a court order; or (2) bad faith" or conduct "tantamount to bad faith." *See Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021); *Fink*, 239 F.3d at 994 ("sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith"); *see also Goodyear*, 581 U.S. at 107 (noting that a court may order "a party that has acted in bad faith to reimburse legal fees and costs incurred by the other" pursuant to its inherent power).

Bad faith extends to "a full range of litigation abuses." *Chambers*, 501 U.S. at 46. It includes "conduct done vexatiously, wantonly, or for oppressive reasons." *Am. Unites for Kids*, 985 F.3d at 1090. A party also demonstrates bad faith by "delaying or disrupting the litigation." *Primus Auto. Fin. Servs. Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (internal quotation marks and citation omitted). A finding of bad faith "requires proof of bad intent or improper purpose." *Am. Unites for Kids*, 985 F.3d at 1090.

Conduct tantamount to bad faith includes "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 994. The assessment of whether an attorney's conduct amounts to bad faith or conduct tantamount thereto is subjective. *Pacific Harbor*, 210 F.3d at 1118. Bad faith does not "require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." *Fink*, 239 F.3d at 992 (citation omitted). A finding of willful disobedience of a court order, on the other hand, "does not require proof of [a] mental intent such as bad faith or an improper motive." *Evon v.*

*Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012).

### C. Boies Schiller Has Engaged In Pervasive Bad Faith By Repeatedly Violating The Court's Orders Thereby Justifying The Imposition Of Sanctions

Sanctions are warranted based on Boies Schiller's willful violations of this Court's orders. In the incidents described in detail above, Boies Schiller engaged in bad faith conduct or conduct tantamount to bad faith and willfully violated this Court's orders, all of which has wrongfully proliferated this case. *See, e.g., Jones v. Nat'l R.R. Passenger Corp.*, No. 15-cv-02726-TSH, 2024 U.S. Dist. LEXIS 175995, at *7-11 (N.D. Cal. Sept. 27, 2024) (finding counsel's brief one-time comment to prospective jurors sufficient for finding of bad faith and sanctions). Boies Schiller has repeatedly disobeyed or ignored the Court's orders regarding meeting and conferring and submitting joint filings. *See* ECF No. 145 at 1:20-2:1 (citing ECF Nos. 115, 116, 120, 122, 125) (listing Plaintiff's various violations of Court orders and missed deadlines). On two separate instances, Boies Schiller unilaterally filed Plaintiff's own version of documents that were supposed to be submitted jointly by the parties. The second time Boies Schiller did so, it was after having been admonished by the Court for failing to follow Court orders on several prior occasions. Boies Schiller has also simply refused to stop meeting and conferring when it suited them, rather than waiting for the parties to reach an impasse or find their way to agreement.

Boies Schiller's violations were deliberate and therefore warrant imposition of sanctions under this Court's inherent authority. *See Evon*, 688 F.3d at 1035; *Fink*, 239 F.3d at 993-94. Such conduct also constitutes recklessness motivated by the improper purpose of harassing LS & Co. and its counsel and diverting attention away from trial preparation to gain a tactical advantage over LS & Co. *See Ayer v. White*, No. CV 21-08773-RSWL-RAOx, 2022 U.S. Dist. LEXIS 117 307, at *5 (C.D. Cal. June 28, 2022) (award of sanctions under Section 1927 appropriate where there is "recklessness . . . combined with an additional factor such as frivolousness, harassment, or an improper purpose") (quoting *Fink*, 239 F.3d at 994).

That the conduct was committed for an improper and/or harassing purpose is evidenced by the fact that Boies Schiller refused to continue the meet and confer process prior to its March 1,

1  2025 unilateral filing and refused to communicate with LS & Co.'s lead counsel or provide LS &
2  Co. with proposed edits to the jury instructions prior to its April 24, 2025 unilateral filing. This
3  conduct resulted in the needless multiplication of proceedings forcing LS & Co. to file its
4  Objections and Notice, in addition to the parties having to twice make a second attempt at filing
5  required documents jointly. It also led to the untimely filing of the Admitted Exhibits and
6  Offered, But Not Admitted Exhibits even though the parties had sufficient time remaining on
7  May 15 to meet and confer. *See* ECF No. 194.[3] Such conduct therefore warrants the imposition
8  of sanctions under Section 1927 as well. *See Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir.
9  1986), ("damages under section 1927 are appropriate where . . . the proceeding is conducted in
10 bad faith for the purpose of delay or increasing costs").

11  This Court has already found that "Plaintiff has repeatedly violated Court orders and
12 missed deadlines" and that "Plaintiff's failure to adhere to deadlines has been an issue throughout
13 this action." ECF 145, 1:19, 27-28. This conduct is imputed to Boies Schiller who has facilitated,
14 encouraged, and engaged in this misconduct through their above actions.

15  Sanctions against Boies Schiller are also warranted because its ambivalence towards court
16 deadlines appears to be limited to ***joint*** filings that impacted LS & Co. in an unacceptable way.
17 Boies Schiller's behavior is particularly egregious because it puts LS & Co. in an unfair position
18 of being forced to miss court deadlines when Boies Schiller decided ***they*** were done meeting and
19 conferring. At first glance, then, each missed joint filing suggests that LS & Co. or Paul Hastings
20 does not care about deadlines, when, in reality, the record is clear that LS & Co. and Paul
21 Hastings are working to meet each deadline.[4]

22 / / /
23 / / /
24 / / /

---

[3] As of the filing of this Motion, LS & Co. had not heard back from Plaintiff in response to its most recent correspondence requesting getting the Offered, But Not Admitted Exhibits on file.
[4] Even though Plaintiff had four attorneys (two partners, one counsel, and one associate), including two in California, and LS & Co. had two (one partner and one associate), it was LS & Co., not Plaintiff, who was repeatedly ready to meet and confer late into the night to make sure documents could be filed in compliance with the Court's orders.

D. **The Court Should Award Monetary Sanctions And Require The Boies Schiller Partners At Issue To Develop And Provide Training To Their Litigation Associates Regarding The Professional Responsibilities of Trial Counsel**

Boies Schiller has demonstrated their utter disregard for the Court's authority and has made it abundantly clear that they have zero interest in cooperating in good faith to meet Court deadlines and comply with Court orders. The Court should enter monetary sanctions in the amount of $15,236.41, the amount of attorneys' fees and staff overtime costs incurred by LS & Co. and Paul Hastings related to Plaintiff's aforementioned obstructive behavior.

LS & Co.'s attorneys' fees are reasonable. As relevant here, courts in this jurisdiction calculate reasonable attorneys' fees using the "lodestar" method, "which multiplies the number of hours reasonably expended on the matter by a reasonable hourly rate." *PopTop Corp. v. Rakuten Kobo, Inc.*, No. 20-cv-04482-DMR, 2022 U.S. Dist. LEXIS 55708, at *5 (N.D. Cal. Mar. 28, 2022), *aff'd*, No. 2022-1688, 2023 WL 2783178 (Fed. Cir. Apr. 5, 2023). Both the hourly rates and the number of hours LS & Co expended were reasonable.

First, LS & Co.'s hourly billing rates are reasonable when compared to the prevailing market rates in the Bay Area. *See Andrews v. Equinox Holdings, Inc.*, 570 F. Supp. 3d 803, 808 (N.D. Cal. 2021) (finding counsel demonstrated that hourly billing rate of $1,250 was reasonable in employment litigation matter); *Human Rights Def. Ctr.*, No. 20-cv-01296-JCS, 2021 U.S. Dist. LEXIS 59778, at *33 (N.D. Cal. Mar. 28, 2021) (approving counsel's hourly billing rate of $1,100 and finding it "significant . . . that numerous judges in this district have found that [counsel's] rates . . . are reasonable"). Paul Hastings's rates are also comparable to Boies Schiller's. *See* Fox Decl., ¶ 10 and Ex. E. Indeed, in a motion for attorneys' fees filed by Boies Schiller last year they cited to *In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115, at *732 (N.D. Cal. Mar. 17, 2017) for the proposition that hourly billing rates ranging up to $1,600 for partners is reasonable. *See id.*

///

Second, LS & Co. is only seeking to recover a limited amount of legal services, namely only those spent meeting and conferring in advance of each of Plaintiff's unilateral filings and drafting its Objections and Notice in response to the respective unilateral filings. The number of hours LS & Co.'s counsel spent, 9.4, was not only appropriate, but critical in light of Plaintiff's behavior. Moreover, LS & Co. staffed the defense of this case leanly—one partner and one associate only. *See* Fox Decl., ¶¶ 8-9 and Ex. D. LS & Co. does not seek to recover the costs for bringing this motion.

In addition to monetary sanctions, district courts also have the power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45; *see also In re Hubbard*, No. 12-cv-1975-L(WMc), 2013 U.S. Dist. LEXIS 14949, at *15-16 (S.D. Cal. Feb. 4, 2013) (imposing discipline in addition to monetary sanctions where "the purpose of monetary sanctions differ from the purpose of the discipline" and "there are no laws or other applicable rules that prevent the Court from imposing discipline in addition to monetary sanctions"). While both LS & Co. and Paul Hastings should be compensated for the fees and costs they incurred as a result of Boies Schiller's misconduct, monetary sanctions do not necessarily deter Boies Schiller from engaging in similar behavior in future litigations – in this Court and elsewhere. To the extent this is how Boies Schiller is training its attorneys to prepare for and behave in trial, it is a concerning practice that warrants corrective action from the Court.

To that end, LS & Co. respectfully asks that the Court consider nonmonetary sanctions in the form of an order requiring that Mr. Schiller and Mr. Margulis, the partners on this case, develop and conduct a one-hour training for the litigation attorneys in their offices (San Francisco and New York, respectively) on professional responsibility in the context of trials. This will help ensure that the behaviors seen in this case do not happen again.

Finally, LS & Co. welcomes any other sanction the Court deems appropriate based on the concerns the Court raised repeatedly about the conduct of the Boies Schiller attorneys during the later months of this case.

## IV. CONCLUSION

Orders mean something. When a party violates them, there must be consequences. LS & Co. respectfully requests that this Court impose the above-requested sanctions against Plaintiff's counsel.

DATED: May 21, 2025                          PAUL HASTINGS LLP

By: _____*/s/ Cameron W. Fox*_____
           CAMERON W. FOX

Attorneys for Defendant
LEVI STRAUSS & CO.